[No. B030132. Second Dist., Div. Four Feb. 24, 1989.]

MARGARET ANN DRAIN LAWRENCE, Plaintiff and Respondent,
v.
WALZER & GABRIELSON et al., Defendants and Appellants.

1502

COUNSEL

Lewis, D'Amato, Brisbois & Bisgaard, Mary G. Whitaker, James G. Bohm and John J. Aumer for Defendants and Appellants.

Peter R. diDonato for Plaintiff and Respondent.

OPINION

**GEORGE, J.**—The law firm of Walzer & Gabrielson and four attorneys associated with that firm are defendants in an action for legal malpractice brought by Margaret Drain Lawrence, a former client, and appeal from the denial of their petition to compel arbitration.[1] Defendants contend (1) the retainer agreement signed by plaintiff compels arbitration of this action for legal malpractice, and (2) defendants did not waive their right to compel arbitration by conducting discovery in the present case. Plaintiff contends the appeal is frivolous and asks this court to impose sanctions. For the reasons that follow, we affirm the order of the court below but deny sanctions.

---

[1] Defendants also appeal from the trial court's order denying a motion for reconsideration of the order denying the petition to compel arbitration and motion to stay proceedings pending arbitration. Because the order denying the petition is appealable (Code Civ. Proc., § 1294, subd. (a)), and the appeal from that order will resolve defendants' various contentions, we need not and do not determine whether an order refusing to reconsider the denial of a petition to compel arbitration is an appealable order. (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 705, fn. 4 [131 Cal.Rptr. 882, 552 P.2d 1178].)

## FACTS

In 1986 plaintiff retained defendants to represent her in the dissolution of her marriage.[2] A retainer agreement, consisting of a three-page letter from defendants to plaintiff, states: "This letter sets forth the agreement concerning our representation of you." Thirteen numbered paragraphs follow. The first nine paragraphs concern the computation and payment of attorney's fees and costs. In paragraph 10, defendants promise to keep plaintiff informed of the progress of her case. Paragraph 11 then states: "In the event of a dispute between us regarding fees, costs or any other aspect of our attorney-client relationship, the dispute shall be resolved by binding arbitration. The prevailing party in any arbitration or litigation between us shall be entitled to reasonable attorney's fees and costs." The final two paragraphs contain a promise by defendants to conform "to the highest legal and ethical standards," and instructions to plaintiff to sign and return a copy of the letter. The letter was dated May 5, 1986, and was signed by plaintiff on May 8, 1986.

On February 9, 1987, plaintiff filed a complaint alleging causes of action for legal malpractice and willful breach of fiduciary duty. On April 27, 1987, defendants filed a petition to compel arbitration and a motion for stay of proceedings pending arbitration. (Code Civ. Proc., §§ 1281.2, 1281.4.) In opposition, plaintiff submitted her declaration stating the retainer letter was handed to her by a paralegal employed by defendants who told her "to sign it, and return it, with $7,500.00, if [she] wanted the firm of Walzer and Gabrielson to act as [her] attorneys . . . ." Plaintiff's declaration said she "had no idea I was giving up my right to sue my attorneys . . . in Superior Court, for their future malpractice, and that I was giving up my right to a jury trial." Plaintiff declared she would not have signed the agreement had she been told that she thereby "would be submitting the matter of their possible future malpractice to arbitration."

The court below, stating it believed plaintiff's declaration, denied the petition to compel arbitration and the motion for stay pending arbitration.

## DISCUSSION

### WHETHER THE ARBITRATION CLAUSE IN THE RETAINER AGREEMENT COVERS A CLAIM FOR LEGAL MALPRACTICE

Our Supreme Court has observed that "arbitration has become an accepted and favored method of resolving disputes [citations], praised by the

---

[2]This division decided an appeal in that action. (*In re Marriage of Lawrence* (Feb. 11, 1988) B023578 [nonpub. opn.].)

courts as an expeditious and economical method of relieving overburdened civil calendars [citation]." (*Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699, 706-707.) Code of Civil Procedure section 1281 provides: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Pursuant to section 1281.2, "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy . . . the court shall order the petitioner and the respondent to arbitrate the controversy *if it determines that an agreement to arbitrate the controversy exists* . . . ." (Italics added.) ■ A threshold issue, therefore, is whether an agreement to arbitrate a legal malpractice claim exists. (*Ramirez* v. *Superior Court* (1980) 103 Cal.App.3d 746, 752 [163 Cal.Rptr. 223]; *Windsor Mills, Inc.* v. *Collins & Aikman Corp.* (1972) 25 Cal.App.3d 987, 992 [101 Cal.Rptr. 347].)

■ "[We] start with the basic premise that arbitration is consensual in nature. The fundamental assumption of arbitration is that it may be invoked as an alternative to the settlement of disputes through the judicial process 'solely by reason of an exercise of choice by [all] parties.' [Citation.] In other words, a party cannot be compelled to arbitrate a dispute he has not agreed to submit." (*Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 355 [133 Cal.Rptr. 775, 84 A.L.R.3d 343].) "[N]otwithstanding the cogency of the policy favoring arbitration and despite frequent judicial utterances that because of that policy every intendment must be indulged in favor of finding an agreement to arbitrate, the policy favoring arbitration cannot displace the necessity for a voluntary agreement to arbitrate. [Citation.] . . . '[T]here is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate. . . .' [Citation.] And it has been held that to be enforceable, an agreement to arbitrate must have been 'openly and fairly entered into.' [Citations.]" (*Id.,* at p. 356; *Beynon* v. *Garden Grove Medical Group* (1980) 100 Cal.App.3d 698, 704 [161 Cal.Rptr. 146]; *Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1977) 67 Cal.App.3d 19, 32 [136 Cal.Rptr. 378].) As our Supreme Court has held, "There is indeed a strong policy in favor of enforcing agreements to arbitrate, but there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . ." (*Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 481 [121 Cal.Rptr. 477, 535 P.2d 341].)

■ Defendants contend that inclusion of the phrase "any other aspect of our attorney-client relationship" in the arbitration clause of the retainer agreement compels arbitration of "[a]ny dispute arising out of the attorney-client relationship," including a claim of legal malpractice. (Italics in

original.) If this phrase is considered standing alone, defendants' argument would be compelling. (Cf. *Izzi* v. *Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1315 [231 Cal.Rptr. 315]; compare *Victoria* v. *Superior Court* (1985) 40 Cal.3d 734, 738 [222 Cal.Rptr. 1, 710 P.2d 833].) The issue before us, however, is not whether the phrase "any other aspect of our attorney-client relationship," standing alone, would encompass an action for attorney malpractice, because in the retainer agreement at issue, these words do *not* stand alone. Instead, the phrase is one provision in an agreement devoted almost exclusively to financial matters[3] and appears in a sentence which reads: "In the event of a dispute between us regarding fees, costs or any other aspect of our attorney-client relationship, the dispute shall be resolved by binding arbitration." In this context, the arbitration clause appears to be limited to disputes concerning financial matters such as fees and costs and is most likely to be so viewed by a prospective client to whom the proposed agreement is tendered by the law firm.

■ "The rule of construction which governs us is the doctrine of *ejusdem generis* (also known as Lord Tenterden's rule) which states that where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The rule is based on the obvious reason that if the [writer] had intended the general words to be used in their unrestricted sense, [he or she] would not have mentioned the particular things or classes of things which would in that event become mere surplusage. The words 'other' or 'any other' following an enumeration of particular classes should be read therefore as *other such like* and to include only others *of like kind or character*. [Citations.]" (*Scally* v. *Pacific Gas & Electric Co.* (1972) 23 Cal.App.3d 806, 819 [100 Cal.Rptr. 501], italics in original; *Fiske* v. *Niagara Fire Ins. Co.* (1929) 207 Cal. 355, 357 [278 P. 861].) ■ In the present case, the broad interpretation of the phrase "any other aspect of our attorney-client relationship" advanced by defendants would include the examples which precede it of disputes regarding fees and costs and render these examples mere surplusage. Instead, the above rule mandates that we interpret the phrase "any other aspect of our attorney-client relationship" to apply only to financial matters similar to disputes regarding fees and costs.

In adopting the foregoing interpretation we avoid construing the retainer provisions as a document which misleadingly[4] appears to the client to deal

---

[3] Civil Code section 1647 states: "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."

Civil Code section 1648 provides: "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."

[4] We do not suggest defendants intentionally sought to mislead plaintiff.

almost exclusively with financial matters, while extracting from her a significant yet inconspicuous relinquishment of the client's rights regarding future claims of malpractice.

■ An arbitration agreement constitutes a waiver of the right to a jury trial. "[T]he right to select a judicial forum, vis-à-vis arbitration, is a ' "substantial right," ' not lightly to be deemed waived. [Citations.]" (*Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 67 Cal.App.3d 19, 31.) "Although an express waiver of jury trial is not required (*Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699, 713-714), by agreeing to arbitration, the [client] does forfeit a valuable right. The law ought not to decree a forfeiture of such a valuable right where the [client] has not been made aware of the existence of an arbitration provision or its implications. Absent notification and at least some explanation, the [client] cannot be said to have exercised a 'real choice' in selecting arbitration over litigation." (*Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d 345, 361.) "In *Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699, 712-714, the Supreme Court made clear that the civil jury trial right could be . . . waived by an agreement entered in advance of any pending action. . . . However, it in no way suggested that jury trial rights . . . could be taken away from one who unknowingly signed a document purporting to exact a waiver." (*Ramirez* v. *Superior Court, supra,* 103 Cal.App.3d 746, 756.) ■ Plaintiff asserted, and the court below believed, she did not understand that by signing the letter she was agreeing to submit any future malpractice claim to arbitration.

The arbitration clause in the present case was part of a retainer agreement drafted by defendant attorneys and presented to the plaintiff client for her signature. It was not the product of negotiation. ■ "[T]he language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." (Civ. Code, § 1654.)

A formal opinion of the State Bar of California concludes that although "there is nothing inherently improper about an arbitration agreement between a lawyer and client which extends to malpractice claims," the client must be "fully advised of the possible consequences of that agreement." (Cal. Compendium on Prof. Responsibility, pt. IIA, State Bar Formal Opn. No. 1977-47, p. 1.) In examining a fee agreement between an attorney and a client, our Supreme Court recently held: " ' "All dealings between an attorney and his client that are beneficial to the attorney will be closely scrutinized with the utmost strictness for any unfairness." ' " (*Hawk* v. *State Bar*

(1988) 45 Cal.3d 589, 598 [247 Cal.Rptr. 599, 754 P.2d 1096].)[5] As we have recognized: " ' "If a party wishes to bind in writing another to an agreement to arbitrate future disputes, such purpose shall be accomplished in a way that each party to the arrangement will fully and clearly comprehend that the agreement to arbitrate exists and binds the parties thereto. . . ." ' " (*Windsor Mills, Inc.* v. *Collins & Aikman Corp., supra,* 25 Cal.App.3d 987, 993-994.)

■ Accordingly, like the trial court, we conclude plaintiff did not agree to binding arbitration of her claims of legal malpractice and breach of fiduciary duty. In light of our holding, we need not address the question whether, by engaging in discovery in the present case, defendants waived any right to arbitration.

■ Remarkably, plaintiff asks this court both to "declare this appeal to be frivolous and award [sanctions]" and "to publish its opinion because this instant issue . . . is a matter of first impression in the United States." Although we affirm the trial court's order, the appeal is not frivolous and we decline to impose sanctions. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650-651 [183 Cal.Rptr. 508, 646 P.2d 179].)

### DISPOSITION

The order denying the petition to compel arbitration is affirmed.

McClosky, Acting P. J., and Goertzen, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 17, 1989.

---

[5] Although arbitration offers benefits for both parties (*Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699, 711), it is also true that "[t]he manifest objective of [an attorney] in including an arbitration clause is to avoid a jury trial and thereby hopefully minimize losses for any [legal] malpractice and correspondingly to hold down the amount of any recovery by the [client]. [Citation.]" (*Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d 345, 361; Cal. Compendium on Prof. Responsibility, pt. IIA, State Bar Formal Opn. No. 1977-47, p. 1.)