[No. B205181. Second Dist., Div. Eight. June 2, 2009.]

FAGELBAUM & HELLER LLP, Plaintiff and Respondent, v.
ROBERT O. SMYLIE, Defendant and Appellant.

**COUNSEL**

Robert Smylie & Associates, James A. Moss; Esner, Chang & Ellis, Stuart B. Esner and Gregory R. Ellis for Defendant and Appellant.

Nemecek & Cole, Frank W. Nemecek, Mark Schaeffer and Joel Gluzman for Plaintiff and Respondent.

**OPINION**

**BAUER, J.**[*]—

## INTRODUCTION

Appellant Robert O. Smylie (Smylie) appeals from a judgment confirming an arbitration award which resolved a dispute over legal fees and costs

---

[*]Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

incurred in two prior lawsuits. He contends that the court should have stayed the lawsuit filed by respondent law firm, Fagelbaum & Heller LLP (F&H), until the completion of the nonbinding arbitration Smylie initiated pursuant to the mandatory fee arbitration act (MFAA), Business and Professions Code section 6200 et seq.[1] Smylie also contends that the court should have stayed the contractual arbitration initiated by F&H pursuant to the California Arbitration Act (CAA), Code of Civil Procedure section 1280 et seq. Smylie claims that he did not waive MFAA arbitration, that there was no agreement for CAA arbitration of one matter, and that the agreement to arbitrate another matter was unenforceable. We reject Smylie's contentions and affirm the judgment.

## BACKGROUND

### 1. *F&H's Motion to Compel Arbitration*

On September 29, 2006, F&H filed a complaint against Smylie, alleging breach of contract and common counts. The first cause of action alleged that in August 2001, F&H and Smylie entered into an oral agreement for legal services in connection with *Neo-Tech Cosmetic Manufacturing, Inc. v. Smylie* (Super. Ct. Orange County, 2003, No. 01CC10898) (Neo-Tech litigation). It alleged that Smylie breached the agreement by failing to pay legal fees and costs in the sum of $108,918. The second cause of action alleged the same facts as the first but added that there existed a written fee agreement, which had been lost. The third cause of action alleged that in September 2003, the parties entered into a written fee agreement with regard to a bad faith action that Smylie intended to file against his insurance carrier because of its refusal to defend him in the Neo-Tech litigation. It was alleged that Smylie breached the agreement by failing to pay the sum of $318,745. The third cause of action also alleged that F&H had instituted binding arbitration, as provided in the written agreement, and that the third cause of action had been included in the complaint solely for the purpose of obtaining provisional relief. The final three counts of the complaint were common counts—open book account, account stated, and unjust enrichment.

---

[1] Business and Professions Code section 6200 et seq. established a system of voluntary and involuntary arbitration and mediation of fee disputes between attorneys and clients, to be administered by local bar associations. The MFAA provides that, with certain exceptions, the attorney must submit to a fee arbitration demanded by a client. (See Bus. & Prof. Code, § 6200, subds. (a)–(d).) The parties may agree in writing to be bound by the arbitration award, and, if they do not, either party may seek a trial after arbitration, if sought within 30 days after the notice of award is mailed. (*Id.*, §§ 6203, subd. (b), 6204.)

All further statutory references are to the Business and Professions Code, unless otherwise indicated.

In October 2006, F&H filed a motion to compel binding arbitration and to consolidate arbitration proceedings. In support of the motion, F&H submitted the declaration of its partner, Jerold Fagelbaum, who stated that F&H was a subtenant in Smylie's suite of law offices, and that when Smylie failed to pay fees under the 2003 agreement, the parties agreed that Smylie would reduce the debt by allowing F&H a rent credit each month. In April 2006, after Smylie had refused to accept further credits and demanded that F&H pay rent, F&H initiated binding arbitration, as provided in the 2003 fee agreement, by submitting a demand to Action Dispute Resolution Services, Inc. (ADR).

Fagelbaum stated that, in response to the demand, Smylie initiated nonbinding MFAA arbitration by submitting a "Client's Request for Resolution of a Fee Dispute" form to the Beverly Hills Bar Association (BHBA) on June 30, 2006. A copy of the BHBA form is attached as an exhibit to Fagelbaum's declaration. The form states that the arbitration would be nonbinding unless both client and attorney agreed to a binding arbitration. The box next to "Non-binding" was checked. The form shows that the total amount in dispute was $1,077,566, of which Smylie claimed to have paid F&H the sum of $471,639. A refund of the latter amount was claimed, which would leave a balance of zero. The form includes an attachment alleging that F&H's malpractice had damaged Smylie in an amount exceeding the amounts already paid plus those claimed by F&H as still owing.

Fagelbaum also stated that on August 22, 2006, Smylie served F&H with a three-day notice to pay rent or quit. F&H invoked the arbitration clause in the sublease by submitting a demand to the American Arbitration Association (AAA). On September 14, 2006, Smylie responded to the AAA demand by serving a cross-demand in which he alleged that he owed nothing in legal fees, that he was entitled to a refund of fees, and that those issues were then subject to a nonbinding arbitration before the BHBA. The cross-demand alleged that Smylie had notified F&H that it could no longer offset the rent with outstanding legal fees. Smylie demanded relief in the sum of $75,685 in unpaid rent, plus ongoing rental damages, late fees, interest, and attorney fees.

In September 2006, the parties submitted to mediation through the BHBA, but they did not come to an agreement. Fagelbaum asserted in his declaration that, after Smylie left the mediation site, his attorney, Mark Egerman, agreed that the mediation "should conclude" the parties' use of the services of the BHBA and that the parties "should be deemed" to have complied with the

requirements of the MFAA. In addition, Fagelbaum asserted that he and Egerman also "agreed in principle" that the parties' disputes "should be" consolidated, but that Egerman later reneged on this agreement.

F&H also submitted the declaration of its attorney, Frank Nemecek, who stated that he attempted, without success, to obtain Egerman's written confirmation of the agreement alleged by F&H in his declaration. Nemecek also stated that he attempted to go forward with the ADR arbitration, but ADR refused to do so without a court order.

F&H argued to the trial court that Smylie had waived his right to an MFAA arbitration under the procedures adopted by the BHBA. It argued that because Smylie alleged—in both the BHBA form and the AAA cross-demand—that F&H committed legal malpractice, he waived his right to nonbinding MFAA arbitration.

### 2. Smylie's Opposition to Motion

In opposition to F&H's motion to compel arbitration, Smylie submitted his declaration, in which he stated that he had searched for but not found a written retainer agreement relating to the Neo-Tech litigation and did not believe that one was ever executed. He denied having orally agreed to arbitrate disputes with F&H. He also submitted Egerman's declaration, in which Egerman denied agreeing to waive his client's rights under section 6200, to deem the parties in compliance with its requirements, to conclude the parties' use of the BHBA, or to consolidate arbitrations. Egerman denied that he had the authority to bind his client to any of the agreements alleged by Fagelbaum and denied that he had entered into any such agreements.

### 3. Order Compelling Arbitration

The trial court granted F&H's motion to compel arbitration November 22, 2006. In a written decision, the court consolidated the MFAA arbitration and the AAA arbitration into the ADR binding arbitration, which would proceed immediately. The court gave no reasons for its order and made no express findings. The order also stated: "In the event the arbitrator(s) in the ADR Arbitration determine that any of F&H's claims against [Smylie] are not subject to an arbitration agreement, such claim or claims shall remain a subject of this action."

4. *Motion to Confirm Award; Opposition and Request to Vacate Award*

The binding ADR arbitration went forward with a three-arbitrator panel, which issued a unanimous award September 27, 2007. The award recited the issues presented as F&H's claim for legal fees relating to the Neo-Tech litigation, legal fees and third party vendor fees relating to the bad faith action, and Smylie's "eviction claim." The panel found that the parties had executed the lost written retainer agreement relating to the Neo-Tech litigation and that it contained an arbitration clause. It rejected Smylie's statute of limitations defense and awarded F&H its fees for the Neo-Tech litigation. The panel found that F&H had not committed legal malpractice in the course of the bad faith litigation, and that, if it had done so, there was no prejudice to Smylie. F&H was thus awarded its fees and the amounts owed to third party vendors arising out of the bad faith litigation. The panel rejected Smylie's claims under the sublease and enforced the parties' agreement permitting F&H to deduct the rent owed each month from the outstanding legal fees.

The panel awarded F&H its attorney fees incurred in the arbitration in the sum of $277,124 and costs in the sum of $33,925. The total award against Smylie was $1,078,897. Smylie submitted an application to amend the award, which the panel denied.

On November 7, 2007, F&H moved to confirm the award. Smylie opposed the motion to confirm the award and, in his opposition, requested that the trial court vacate the award on the ground that the arbitrators had been without power to proceed with a binding arbitration because Smylie had demanded, but was not afforded, his right to a nonbinding MFAA arbitration. In the alternative, Smylie sought correction of the award as set forth in a motion he had brought at arbitration.

5. *Judgment and Appeal*

The trial court granted F&H's motion to confirm and issued a statement of decision. In its statement of decision, the court found that Smylie had waived any right to other arbitration on the grounds successfully argued by F&H in its motion to compel arbitration. The court enumerated the facts upon which it found that Smylie had waived his right to nonbinding MFAA arbitration on five occasions by alleging that F&H committed malpractice. The court explained that the first two waivers were effected by the allegations on the BHBA form demanding MFAA arbitration and by the AAA cross-demand. In addition, the court cited Smylie's opposition to F&H's application for a right to attach order, his opposition to F&H's motion to compel arbitration, and his

having participated fully in the ADR arbitration, without asserting that the arbitrators lacked jurisdiction because of his pending claim for MFAA arbitration.

Judgment was entered December 27, 2007, and the statement of decision was filed the same day. A superseding judgment was entered January 15, 2008, nunc pro tunc as of December 27, 2007. Smylie filed a timely notice of appeal January 22, 2008.

## DISCUSSION

### 1. *Standard and Scope of Review*

Smylie contends that the trial court erred in compelling CAA arbitration while his MFAA arbitration was pending and that the court erred in confirming the award. F&H contends that Smylie failed to preserve his right to appellate review of the order compelling arbitration by failing to file a petition for writ review or a separate petition to vacate the award. F&H cites no authority requiring intermediate writ review of an order compelling arbitration. Further, none of the authorities cited by F&H in support of this contention involved an appeal challenging an order compelling arbitration after entry of the final judgment; the appellants in those cases raised arbitrability issues for the first time on appeal from the judgments confirming the awards, without having objected prior to submission or having filed petitions to vacate within 100 days after the issuance of the award. (See *Berg v. Traylor* (2007) 148 Cal.App.4th 809, 823 [56 Cal.Rptr.3d 140]; *Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648, 658–660 [98 Cal.Rptr.2d 378]; *Knass v. Blue Cross of California* (1991) 228 Cal.App.3d 390, 393–396 [279 Cal.Rptr. 124].)

The rule of forfeiture invoked by F&H applies not to parties like Smylie who have been compelled to arbitrate but to those who fail to raise the invalidity of the arbitration process at the outset, "so that prompt judicial resolution may take place before wasting the time of the adjudicator(s) and the parties. If a trial court compels arbitration nonetheless, the party resisting arbitration may seek review of the ruling on appeal from an order that confirms the award. [Citation.] If the arbitration process is found to be invalid, the responsibility for a waste of resources would then lie with the trial court, not the litigant . . . ." (*Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 328–329 [27 Cal.Rptr.3d 10], fn. omitted.) Thus, "[w]ith respect to an order compelling arbitration, the question is not *whether* an aggrieved party is entitled to appellate review, but *when.* . . . [N]o immediate, direct appeal lies from an order compelling arbitration. [Citations.] But such an order is subject to review on appeal from the final judgment. [Citations.]"

(*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 648 [9 Cal.Rptr.3d 422]; see also Code Civ. Proc., §§ 1294, subd. (d), 1294.2.)

The standard of review of an order compelling arbitration is substantial evidence, where the trial court's decision was based upon the resolution of disputed facts, or de novo where the facts are not in conflict. (*Hartnell Community College Dist. v. Superior Court* (2004) 124 Cal.App.4th 1443, 1448–1449 [22 Cal.Rptr.3d 410].) As Smylie does not challenge the court's factual findings, we independently review the order compelling arbitration. Our review of the written agreements and arbitration demands and cross-demand in evidence is de novo, as well, as there was no conflicting extrinsic evidence. (See *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865–866 [44 Cal.Rptr. 767, 402 P.2d 839].)

## 2. *Relevant Principles Relating to MFAA Arbitration*

■ The MFAA required the State Bar to establish and maintain a system for the arbitration and mediation of attorney-client disputes regarding fees and costs, to be administered by local bar associations, and subject to review by the State Bar Board of Governors. (§ 6200, subds. (a), (d).) Under the statutory scheme, once a client demands MFAA arbitration, participation by the attorney is mandatory, and the attorney's "action or other proceeding shall be automatically stayed until the award of the arbitrators is issued or the arbitration is otherwise terminated." (§§ 6200, subd. (c), 6201, subds. (b), (c).)

■ So long as the client was properly served with a notice of the right to MFAA arbitration, "[t]he request for arbitration shall be served and filed prior to the filing of an answer in the action or equivalent response in the other proceeding [commenced by the attorney]; failure to so request arbitration prior to the filing of an answer or equivalent response shall be deemed a waiver of the client's right to arbitration under the provisions of this article . . . ." (§ 6201, subd. (b).) In addition, the client's right to request or maintain an MFAA arbitration is deemed waived if the client commences an action or files any pleading seeking either judicial resolution of a fee dispute or "[a]ffirmative relief against the attorney for damages or otherwise based upon alleged malpractice or professional misconduct." (§ 6201, subd. (d)(2).)

■ Further, a demand for MFAA arbitration may not include a "[c]laim[] for affirmative relief against the attorney for damages or otherwise based upon alleged malpractice or professional misconduct, except as provided in subdivision (a) of Section 6203." (§ 6200, subd. (b)(2).) Pursuant to section 6203, subdivision (a), evidence of malpractice and professional misconduct is admissible only to the extent that it relates to the fees or costs to which the

attorney is entitled, and any refund to the client may consist only of "unearned fees, costs, or both previously paid to the attorney."

The parties may agree to be bound by the award. (§ 6204, subd. (a).) In the absence of such an agreement, either party may, within 30 days after the mailing of notice of the award, request a trial de novo, or binding arbitration if provided by the parties' fee agreement. (*Id.*, subds. (c), (d); *Schatz v. Allen Matkins Leck Gamble & Mallory LLP* (2009) 45 Cal.4th 557 [87 Cal.Rptr.3d 700, 198 P.3d 1109].)

### 3. *Waiver*

Smylie contends that the trial court erred in finding that he waived MFAA arbitration on any of the five cited occasions—in the BHBA form demanding MFAA arbitration, in his opposition to F&H's application for a right to attach order, in his opposition to F&H's motion to compel arbitration, in the ADR arbitration, by his full participation, and in the AAA cross-demand. He contends that he merely alleged on those occasions that F&H committed malpractice, causing him to suffer damages, but did not seek to recover those damages. Thus, he argues, he cannot be deemed to have waived his right to MFAA arbitration because he did not seek affirmative relief due to alleged malpractice or professional misconduct. (§ 6201, subd. (d)(2).)

With regard to the first four occasions which the trial court found to have effected a waiver, Smylie's arguments that these actions were merely defensive may have merit. However, because we conclude that the court's ruling was correct for at least one reason—that Smylie waived MFAA arbitration by requesting affirmative relief in the AAA cross-demand—the judgment must be sustained regardless of the court's other reasons. (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18–19 [112 Cal.Rptr. 786, 520 P.2d 10].) We therefore need not reach Smylie's contentions with regard to the court's first four reasons.

Smylie contends that his AAA cross-demand sought no affirmative relief on account of F&H's alleged malpractice, because he sought only unpaid rent. The AAA cross-demand alleged that Smylie had paid F&H $471,670 in legal fees and costs, and that F&H claimed that $605,927 was still owing, but that due to overbilling and malpractice, not only was no amount due, Smylie was entitled to a refund. Smylie claims that such allegations do not seek affirmative relief, because the cross-demand also alleged that the dispute concerning fees and costs was then pending before the BHBA.

We note that Smylie has not denied that at one time, he had an agreement with F&H whereby F&H was permitted to apply rents as a credit against

Smylie's outstanding debt for legal fees. Indeed, Smylie alleged in the AAA cross-demand that F&H paid the rent in the form of an offset against legal fees for "numerous months," and that the three-day notice to quit or pay rent alleged past-due rents beginning in July 2006, only after Smylie had informed F&H, by letter in March 2006 and by means of the demand for MFAA arbitration in June 2006, that F&H could *no longer* pay rent with offsets. Clearly implied in the allegations of the cross-demand is that there was such an agreement at one time, but because Smylie claimed that he no longer owed F&H a debt for legal fees and costs, due to F&H's alleged malpractice and misconduct, the agreement was terminated.

To award cash rents in lieu of credits in the AAA arbitration, the arbitrator would necessarily have to reach the issues of whether there had been an agreement to pay rent by crediting Smylie's debt for fees and costs, and if so, whether such debt should be eliminated by deducting Smylie's damages for alleged malpractice and misconduct. The AAA cross-demand thus did not simply seek past-due rent, as Smylie claims, but a rescission of the agreement to offset rent against the debt for legal fees and costs, and a refund of monies, which would be due on account of rent, if the arbitrator found that Smylie's damages for malpractice and attorney misconduct were sufficient to offset the entire debt.

■ A client's right to MFAA arbitration is waived by filing any pleading seeking "[a]ffirmative relief against the attorney for damages *or otherwise* based upon alleged malpractice or professional misconduct." (§ 6201, subd. (d)(2), italics added.) A demand for arbitration is a pleading. (*Blatt v. Farley* (1990) 226 Cal.App.3d 621, 627 [276 Cal.Rptr. 612].) It follows that a cross-demand is a pleading. Here, the AAA cross-demand was a pleading seeking affirmative relief consisting of money that would be due only upon elimination of the outstanding legal fees and costs by deducting Smylie's alleged damages for malpractice and misconduct. The AAA demand thus effected a waiver of Smylie's right to MFAA arbitration.

■ Thus, the trial court's implied finding of waiver was not error. Moreover, waiver was not the only ground under the MFAA upon which the trial court could have compelled CAA arbitration. The MFAA gives the court discretion to vacate the automatic stay upon finding that the matter is inappropriate for MFAA arbitration. (§ 6201, subd. (c).) Given the complex issues of malpractice and attorney misconduct at the heart of Smylie's claims and defenses, the MFAA fee arbitration was unlikely to resolve the parties' disputes; thus, the court had discretion to allow F&H's other proceedings— the consolidated ADR and AAA arbitrations—to go forward immediately.

(See *Manatt, Phelps, Rothenberg & Tunney v. Lawrence* (1984) 151 Cal.App.3d 1165, 1172 [199 Cal.Rptr. 246].)[2]

### 4. *Agreement to Arbitrate the Neo-Tech Fees and Costs*

Smylie contends that the trial court erred in compelling CAA arbitration of the Neo-Tech fee dispute because F&H did not prove the existence of an arbitration agreement (alleged in F&H's complaint to have been lost). Smylie further contends that the court erred in referring the issue of the existence of the agreement to the arbitrators.

■ An agreement to arbitrate is an essential jurisdictional prerequisite to CAA arbitration. (Code Civ. Proc., § 1281.2; *Ramirez v. Superior Court* (1980) 103 Cal.App.3d 746, 752 [163 Cal.Rptr. 223].) With some exceptions, an arbitration agreement must be in writing. (*Magness Petroleum Co. v. Warren Resources of Cal., Inc.* (2002) 103 Cal.App.4th 901, 909–910 [127 Cal.Rptr.2d 159].) As the party seeking to compel arbitration, F&H bore the burden of proving the existence of a valid arbitration agreement. (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 586 [55 Cal.Rptr.3d 823].)

Smylie contends that because F&H did not produce an arbitration agreement specific to the Neo-Tech fees and costs, it did not bear its burden to show that such an agreement existed.[3] F&H asked the court to defer that issue to the arbitrator, arguing that "if there is no agreement to arbitrate the *Neo-Tech Litigation* fee dispute, the arbitrator in the ADR arbitration may so rule and F&H will simply pursue those claims in the instant action before this Court." In its order compelling arbitration, the court appears to have granted F&H's request to defer the issue to the arbitration panel. The order states: "In the event the arbitrator(s) in the ADR Arbitration determine that any of F&H's claims against [Smylie] are not subject to an arbitration agreement, such claim or claims shall remain a subject of this action."

---

[2] MFAA arbitration and contractual arbitration are different creatures, with one conducted by a local bar association under its rules, and the other by private means. (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 984 [12 Cal.Rptr.3d 287, 88 P.3d 24].) It would not be within the ADR arbitrator's power to determine the MFAA issues. (See *Aguilar v. Lerner*, at pp. 983–984.) Thus, as Smylie points out, the trial court's purported consolidation of the MFAA arbitration with the two contractual arbitrations was, in essence, an order that the ADR and AAA arbitrations go forward *instead of* the MFAA arbitration.

[3] F&H includes the court's tentative ruling in its appendix, and construes an ambiguous comment in it as a finding that there was such an agreement. Although the court stated at the hearing on the motion that its ruling was "in accordance with the tentative," it did not incorporate the tentative as part of its ruling. Further, F&H has not referred to a local rule that would automatically make the tentative part of the final order. (See generally Cal. Rules of Court, rule 3.1308.) We therefore follow the general rule that written orders supersede tentative decisions, and we disregard the tentative ruling. (See *In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 646–647 [253 Cal.Rptr. 770] [court not bound by intended decision].)

We agree with Smylie that whether there was an agreement to arbitrate was a threshold issue that the trial court was required to determine prior to granting the motion to compel arbitration. (See *Lawrence v. Walzer & Gabrielson* (1989) 207 Cal.App.3d 1501, 1505 [256 Cal.Rptr. 6].) However, we disagree with Smylie's contention that a deferral of the determination of the existence of an agreement expressly to arbitrate the Neo-Tech fees and costs requires reversal. While no arbitration agreement specific to the Neo-Tech matter was produced, Smylie placed all outstanding and previously paid legal fees and costs in issue in the AAA arbitration regarding rental payments under F&H's sublease.

The sublease provides, in relevant part: "The parties hereto hereby agree that any controversy or claim arising out of *or relating to* this Sub-Sublease, or any breach or material default hereof will be settled by binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association. . . ." (Italics added.) As Smylie submitted no extrinsic evidence as to the meaning of that language, we independently construe it, and conclude that it is broad enough to include related controversies that are not expressly described in the agreement. (Cf. *Bos Material Handling, Inc. v. Crown Controls Corp.* (1982) 137 Cal.App.3d 99, 105–106 [186 Cal.Rptr. 740].) Smylie's refusal to accept any more offsets against outstanding legal fees and costs, and instead demanding cash rental payments, based upon his claim of malpractice, created a dispute clearly related to the sublease, in which Smylie had agreed to binding arbitration. Thus, the sublease's arbitration clause was broad enough to include the Neo-Tech controversy, and Smylie's service of a cross-demand for arbitration raising this issue manifested his acknowledgment of that agreement.

### 5. *Agreement to Arbitrate Bad Faith Fees and Costs*

Although Smylie concedes that he signed a written retainer agreement regarding the bad faith litigation and that the agreement contained an arbitration clause, he contends that the agreement to arbitrate those fees and costs was unenforceable, because it was not signed by all parties. That retainer agreement recites that the parties to it were Smylie and three other clients of F&H. There are signature lines for F&H partner Jerold Fagelbaum, Smylie, and three other signatories, the other clients. There are signatures of Smylie and Fagelbaum, but the signature lines for the remaining clients are blank.[4]

---

[4] F&H contends that the retainer agreement was signed by all clients, but refers to a copy of the agreement signed in October 2003, which was submitted in opposition to the motion to confirm the arbitration award. It was not the agreement submitted to support the order compelling arbitration. As Smylie notes, F&H did not sign the October 2003 agreement, and

■ Smylie cites the rule that where the evidence shows that a contract was conditioned upon execution by all parties, the contract is not binding on any signatory until it is signed by all. (*Angell v. Rowlands* (1978) 85 Cal.App.3d 536, 542 [149 Cal.Rptr. 574], citing *Cavanaugh v. Casselman* (1891) 88 Cal. 543 [26 P. 515].) Smylie contends that F&H bore the burden to prove that the agreement was binding without the signatures of the three other clients. He is mistaken. It is the signatory resisting enforcement of the contract who "cannot escape liability unless he affirmatively establishes that the signatures of all parties were contemplated as being a condition precedent to the validity of the contract [citation]." (*Angell v. Rowlands*, at p. 541.) Smylie refers to no evidence that might have met that burden.

Moreover, if the burden of proof had been F&H's, the retainer agreement was sufficient to meet it. The introductory paragraph states: "This letter (the 'Agreement') shall constitute a written retainer agreement between [other clients] individually, and [Smylie], individually . . . , and the law firm. . . ." It is clear from the face of the agreement that Smylie agreed to be individually bound by it.

Smylie contends that other language in the agreement shows otherwise. He refers to paragraph 1, entitled, "Effective Date," which reads: "Upon Clients' returning an executed copy of this Agreement, this Agreement will be deemed effective since the first date the Firm began providing services to Clients." Smylie argues that the use of the plural, "Clients," denotes that the effectiveness of the agreement was conditioned upon execution by all clients. We disagree. Smylie's interpretation ignores the implied definition of "Clients" set forth in the agreement. In the introductory paragraph, after the enumeration of the names of each client "individually," the phrase "collectively the 'Clients' " appears in parentheses. Thus, "Clients" means each client individually, and the use of the plural appears to have been a convenience, not a condition precedent. At most, the term created an ambiguity, which was resolved by the plain statement that the agreement was a contract between F&H and each client individually.

We conclude that Smylie did not meet his burden to prove "that the signatures of all parties were contemplated as being a condition precedent to the validity of the contract [citation]." (*Angell v. Rowlands, supra,* 85 Cal.App.3d at p. 541.) His signature individually bound him to the agreement and to the arbitration clause within it.

---

the next exhibit in the opposition papers shows that F&H rejected the signed agreement. We therefore limit our discussion to the agreement submitted in support of the motion to compel arbitration.

## DISPOSITION

The judgment is affirmed. F&H shall have costs on appeal.

Rubin, Acting P. J., and Flier, J., concurred.

A petition for a rehearing was denied July 16, 2009, and appellant's petition for review by the Supreme Court was denied September 23, 2009, S175015. Werdegar, J., did not participate therein.