Filed 10/29/15  Pedes Orange County v. Harris CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PEDES ORANGE COUNTY, INC., | |
| Plaintiff and Respondent, | G051450 |
| v. | (Super. Ct. No. 30-2014-00742502) |
| TODD S. HARRIS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Ronald L. Bauer, Judge.  Reversed and remanded with directions.

Gordee, Nowicki & Blakeney, Alan J. Gordee and Bryan B. Arnold for Defendant and Appellant.

Michelman & Robinson, Stacey L. Zill and Robin James for Plaintiff and Respondent.

Todd S. Harris appeals from the trial court order denying his motion to compel arbitration of a misappropriation of trade secrets cause of action alleged against him by Pedes Orange County, Inc. (Pedes). Pedes is a corporation that provides medical services and in which Harris, a medical doctor, was a shareholder. The arbitration clause was in an agreement between Pedes and Harris by which Pedes had the right to repurchase Harris's shares under specified circumstances, and which contained a provision by which Harris agreed to not disclose or misuse Pedes' trade secret information. Harris contends the trade secret cause of action fell within the scope of a broadly worded arbitration clause that provided for arbitration of any "controversy or claim aris[ing] out of or related to" the share repurchase agreement. We agree. We reverse the order and direct the trial court to enter a new order granting Harris's motion to compel arbitration.

## FACTS & PROCEDURE

*Background*

The following background facts are primarily taken from the operative first amended complaint (the complaint). Pedes, through its affiliated physicians, provides diagnosis and treatment for vascular disorders. Joseph Hewett, a medical doctor, is Pedes' majority shareholder. Harris is also a Pedes shareholder.

Pacific Medical Innovations (PMI) is a company owned by Hewett, Harris, and Michael Arata, another medical doctor. PMI owns the medical building/surgical center in Newport Beach (the Property) at which Pedes provides its medical services pursuant to a lease with PMI.

Pacific Interventionalists (PI) is another corporation owed by Hewett, Harris, and Arata. It provides professional and administrative services to medical "access centers" such as the Property.

2

Scott Roman is the attorney who provided legal services to Hewett, Harris, and Arata in creating and operating Pedes, PMI, and PI. He is described in Pedes' complaint as the "'everything' attorney" for each of the companies.

The Property has three suites including Suite A (surgical facility) and Suite B (clinical and administrative offices). Suite C is comprised of physician offices and patient care facilities. Roman drafted the 2012 lease between PMI (as landlord) and Pedes (as tenant), pursuant to which Pedes was permitted to use Suites A and B for specified amounts of time each week to provide medical services for its patients. The lease also permitted Pedes to use surgical and diagnostic equipment (the Equipment) located within the Property. Staff working at the Property (including one other physician, who is not a party to this dispute), were employed by PI but as to some, their salary and benefits were paid directly by Pedes for Pedes-related services.

*The Harris/Pedes Share Repurchase Agreements*

In 2012, Harris, as a shareholder of Pedes, executed an agreement governing Pedes' repurchase of his shares under specified circumstances (the 2012 Share Repurchase Agreement). The recitals of the 2012 Share Repurchase Agreement stated its purpose was to "maintain the continuity of [Pedes'] business affairs and management." Accordingly, Pedes and Harris wanted to "provide for the repurchase of [Harris's] shares . . . upon the occurrence of certain events[,]" and to "establish the terms of such repurchase," including establishing the value of the shares. The circumstances triggering a mandatory repurchase of Harris's shares included his death, and the loss of his medical license or other legal disqualification. The circumstances allowing Pedes (or other shareholders) the option to repurchase Harris's shares included any breach of the agreement.

Paragraph 23 of the 2012 Share Repurchase Agreement contained the following arbitration clause: "If a controversy or claim arises out of or [*sic*] related to this Agreement, the parties agree to negotiate the controversy or claim in good faith for a

3

period of thirty (30) days after the controversy or claim is presented before legal proceedings or arbitration are instituted." If the parties are unable to resolve the dispute, "the controversy or claim, at the request of either party . . . shall be determined by binding arbitration" conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

Paragraph 24 of the 2012 Share Repurchase Agreement contained the following provision concerning trade secrets: "[Harris] acknowledges that the trade secrets of [Pedes], including its patients lists, are valuable and unique assets, and [Harris] agrees never, without the prior written consent of [Pedes], to disclose to any entity or use for any purpose whatsoever, except in connection with [Pedes'] business . . . or as required by law, any trade secret of [Pedes] while [Harris] is a shareholder of [Pedes] or at any time thereafter."

Harris's declaration in support of his motion to compel arbitration stated that in 2014 Pedes presented him with an amended repurchase agreement (the 2014 Share Repurchase Agreement). Pedes advised Harris he did not need to sign the document because it was effective without his signature. Pedes does not dispute this assertion and in its respondent's brief concedes the two versions of the agreement are largely the same with regard to the provisions at issue.

As relevant here, the 2014 Share Repurchase Agreement contained the same recitals as to the purpose of the agreement. The trade secrets provision was renumbered as paragraph 23. It included the same language as the trade secrets clause in the 2012 Share Repurchase Agreement, and elaborated that Harris "agrees to keep confidential and to refrain from disclosing trade secrets, professional and business practices, or other confidential or privileged information of [Pedes] or . . . any management services organization that provides management services to [Pedes]." It set forth a more comprehensive list of what was considered confidential or privileged information including, "the terms of any third party payor agreements, the contents of the

4

patient medical records, business methods, business plans, the names and addresses of patients, the contents of financial statements, and the procedures or protocols relating to the performance of professional services, or any phase thereof."

Paragraph 24 of the 2014 Share Repurchase Agreement added a provision precluding Harris from competing with Pedes for five years following a share repurchase. And paragraph 27 contained the same arbitration provision as the 2012 Share Repurchase Agreement, requiring binding arbitration of any "controversy or claim aris[ing] out of or related to this Agreement" at the request of either party. (Hereafter, the 2012 Share Repurchase Agreement and the 2014 Share Repurchase Agreement will be referred to collectively as the Share Purchase Agreements unless otherwise indicated.)

*The Complaint*

Sometime in 2014 Pedes and Harris had a "falling out" and Pedes filed its complaint naming as defendants PMI, Harris, Arata, and attorney Roman. The complaint alleged that as Pedes' business increased it required more use of the Property and the Equipment, for which it had been paying PMI. But after Pedes' and Harris's "unrelated 'fallout'" Harris, aided by Arata and Roman, seized control of PMI and began interfering with Pedes' use of the Property and the Equipment and with its relationships with patients and employees. The complaint alleged 11 breach of contract and tort causes of action against the defendants including: against PMI for breach of contract and breach of the implied covenant of good faith and fair dealing; against Roman for breach of contract, negligence, breach of fiduciary duty, and fraud; against Harris, Arata, and PMI for defamation; and against all defendants for intentional interference with contractual relations and prospective economic advantage, and unfair business practices.

The complaint also alleged a cause of action against Harris alone for misappropriation of trade secrets (the complaint's 10th cause of action, hereafter the trade secrets cause of action). In that cause of action, Pedes alleged the following: "[It] has incurred considerable expense, and dedicated substantial effort, in developing the Pedes

5

name, patient lists and referral sources. Pedes' trade secret information has economic value given that the information was developed by Pedes and was not known to Pedes' competitors. Pedes has made reasonable efforts to ensure that the trade secrets and confidential and proprietary information remained secret by, inter alia, entering into confidentially agreements." Pedes alleged "Harris is in possession of Pedes' confidential, proprietary and trade secret information concerning Pedes' marketing, strategies, practices, procedures, policies, management, contracts, pricing, clients, organization and referral sources. Some of this information has been shared with Harris in confidence as a result of his status as a shareholder of Pedes and/or his work on behalf of Pedes. Pedes is informed and believes, and based thereon alleges, that some of this information has been obtained by Harris through false pretenses, e.g., by Harris contacting the Pedes billing company and requesting the information under the guise that he is entitled to receive the information and/or by accessing, without permission, Pedes' financial accounts and information." Pedes also alleged Harris obtained a fictitious name permit for "'Pedes Los Angeles'" so as to capitalize on Pedes' business goodwill and deceive patients and referral sources. And it alleged Pedes had been injured by Harris's misappropriation of its proprietary, confidential, and trade secret information.

PMI filed a cross-complaint against Pedes for declaratory relief concerning the terms and enforceability of the lease between PMI and Pedes.

*Harris's Motion to Compel Arbitration*

Harris filed a motion to sever the trade secrets cause of action and compel arbitration of it in accordance with the arbitration clauses in the Share Repurchase Agreements, or in the alternative to stay the arbitration of the trade secrets cause of action pending resolution of the other causes of action in the complaint and cross-complaint. In his motion, Harris argued the trade secrets cause of action could easily be severed as it was against him only and did not involve the same issues as the other causes of action.

6

Pedes opposed the motion to compel arbitration arguing the trade secrets cause of action did not fall within the scope of the arbitration clauses because it did not arise out of, and was not related to, the Share Repurchase Agreements. Pedes' counsel provided a declaration stating Pedes and Harris were submitting their dispute over Pedes' right to repurchase Harris's shares under the Share Repurchase Agreements to arbitration. Following an unreported hearing, the trial court issued its minute order stating only, "Harris's [m]otion for [s]everance is denied."

## DISCUSSION

Harris contends the trial court erred by denying his motion to compel arbitration of the trade secrets cause of action. We agree.

"'There is a strong public policy in favor of arbitration. [Citations.] [¶] Under both the [Federal Arbitration Act] . . . and the California Arbitration Act . . . arbitration agreements are valid, irrevocable and enforceable except upon grounds that exist for revocation of the contract generally. [Citations.]' [Citation.] '"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." [Citations.]' ( . . . see *Sparks v. Vista Del Mar Child & Family Services* (2012) 207 Cal.App.4th 1511, 1518 . . . ['[b]ecause arbitration is a contractual matter, a party that has not agreed to arbitrate a controversy cannot be compelled to do so'].)" (*Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 540-541, fn. omitted (*Mendez*).)

A trial court must grant a petition to compel arbitration if it determines that an agreement to arbitrate the controversy exists. (Code Civ. Proc., § 1281.2; *EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1320 (*EFund*).) "There is, however, 'no public policy in favor of forcing arbitration of issues the parties have not agreed to arbitrate.' [Citation.] Thus, in ruling on a motion to compel arbitration, the court must first determine whether the parties actually agreed to arbitrate the dispute. [Citations.] General principles of California contract law guide the court in making this

7

determination. [Citations.]" (*Mendez, supra*, 220 Cal.App.4th at p. 541.) And "where the trial court's denial of a petition to arbitrate presents a pure question of law, we review the order de novo. [Citation.]' [Citations.]" (*Ibid.*)

In this case, the trial court's minute order gives no insight into its reasons for denying Harris's motion to compel arbitration. Pedes conceded in its briefing, and at oral argument, that it offered no evidence or argument, concerning waiver, enforceability, or any potential for inconsistent rulings on facts or law if the trade secrets cause of action was severed. Accordingly, there is no basis for concluding any of Code of Civil Procedure section 1281.2's exceptions to compelling arbitration apply.

The parties agree the sole issue on this appeal is one of contract interpretation, i.e., whether the trade secrets cause of action alleged in the complaint constitutes a "controversy or claim aris[ing] out of or related to [the Share Repurchase Agreements]." The court's ruling did not hinge on the credibility of any extrinsic evidence because Pedes did not dispute the assertions in Harris's declaration. Accordingly, as the ruling was based on the trial court's legal interpretation of the arbitration agreements, our review is de novo.[1]

We agree with Harris the trade secrets cause of action alleged against him is within the scope of the arbitration clauses in the Share Repurchase Agreements. The agreements provide for binding arbitration of any "controversy or claim *aris[ing] out of*

_____

[1]  Throughout its respondent's brief, Pedes makes repeated references to insurance coverage disputes Harris discussed in a motion he filed in the trial court to stay the trial court proceedings pending this appeal. The motion was included in Harris's appellant's appendix, although there is nothing further as to the outcome of that motion. Pedes criticizes Harris for injecting his coverage concerns into this appeal, although we observe they are not mentioned anywhere in Harris's opening brief but are raised by Pedes in its respondent's brief, and then mentioned briefly by Harris in his reply to Pedes' criticisms. We agree with Pedes that Harris's strategic reasons for wanting to arbitrate the trade secrets cause of action is irrelevant to the issue on appeal of whether it *is* arbitrable. Accordingly, we disregard both parties' references to Harris's insurance coverage concerns.

8

*or related to*" them (italics added). Such a provision is "'sufficiently broad to include tort, as well as contractual, liabilities so long as the tort claims "have their roots in the relationship between the parties created by the contract." [Citations.]'" (*Tate v. Saratoga Savings and Loan Assn.* (1989) 216 Cal.App.3d 843, 855, criticized on other grounds in *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376-377; see also *Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 543-544; *Bos Material Handling, Inc. v. Crown Controls Corp.* (1982) 137 Cal.App.3d 99, 105.)

As the party opposing arbitration, Pedes bore the burden of demonstrating the trade secret cause of action was "'"wholly independent"'" of the Share Repurchase Agreements because "any doubts must be resolved in favor of arbitration [citation]." (*Buckhorn v. St. Jude Heritage Medical Group* (2004) 121 Cal.App.4th 1401, 1408.) It did not. The trade secret cause of action was not "wholly independent" of the Share Repurchase Agreements. Both agreements contained provisions by which Harris acknowledged certain information, including patient lists, were considered to be Pedes' trade secrets and prohibiting Harris from disclosing or misusing Pedes' trade secrets. Both agreements provided *any* breach of the agreements would trigger Pedes' repurchase rights. The trade secrets cause of action against Harris alleged Pedes had developed valuable trade secret information and it took efforts to protect that information by entering into "confidentially agreements." Pedes' complaint alleged Harris was in possession of that "proprietary, confidential and trade secret information" in part as a result of his status as a Pedes' shareholder, and that he had misappropriated that information. Even though Pedes did not sue for breach of the Share Repurchase Agreements due to Harris's alleged misappropriation of trade secrets, the trade secrets cause of action at least in part had its roots in the agreements as it was the agreements that designated the information trade secret and required Harris to maintain the confidentiality of the information.

9

Pedes argues the trade secrets cause of action was not related to the Share Repurchase Agreements because protection of trade secrets was not the *purpose* of the Share Repurchase Agreements. Rather, it contends the sole purpose of the Share Repurchase Agreements was to provide for the repurchase of Harris's Pedes shares upon certain occurrences. Pedes points to the recitals of the Share Repurchase Agreements, which stated the purpose of the agreement was to "maintain the continuity of [Pedes'] business affairs and management[;]" to provide for repurchase of Pedes' shares upon certain occurrences, and to establish the method for valuing the shares upon repurchase. But protecting Pedes' trade secrets upon repurchase was clearly intended as a necessary part of maintaining its business affairs—the agreements specifically required it.

Pedes argues the trade secrets cause of action does not relate to the Share Repurchase Agreements as a "matter of common sense" because the trade secrets clauses in the agreements is "more akin to a confidentiality provision wherein Pedes and Harris acknowledged that Pedes has trade secrets and Harris promised to maintain the secrets in confidence." The argument only underscores the point. It was at least in part via the Share Repurchase Agreements that the information was designated to be trade secret and Harris was obligated to keep the information confidential. Thus, Pedes cannot demonstrate the cause of action was wholly independent of the agreement.

Pedes' reliance on *Medical Staff of Doctors Medical Center in Modesto v. Kamil* (2005) 132 Cal.App.4th 679, 681 (*Kamil*), *Marsch v. Williams* (1994) 23 Cal.App.4th 250 (*Marsch*), and *Lawrence v. Walzer & Gabrielson* (1989) 207 Cal.App.3d 1501 (*Lawrence*), is misplaced.

In *Kamil*, the service agreement between a medical group and its insurer provided for arbitration of "'any problem or dispute *concerning the terms of this [a]greement*.*'* (*Kamil*, *supra*, 132 Cal.App.4th at p. 682, italics added.) After terminating the service agreement, the insurer allegedly published defamatory statements about the physicians in the medical group. (*Ibid.*) The court concluded the agreement to

10

arbitrate disputes "'concerning the terms of' the agreement to provide medical care [could not] reasonably be said to include the alleged malicious destruction of the [p]hysicians' personal and professional reputations. . . . There may be cases where the alleged defamation is so intimately bound with the terms of the agreement that arbitration is appropriate. But the terms of this agreement do not give [the insurer] carte blanche to publicly pillory [the p]hysicians in press releases and newspaper reports as alleged here. The defamation complained of here no more concerns the terms of the agreement, than would a punch in the nose during a dispute over a medical billing." (*Id.* at pp. 683-684.) But the arbitration clause in *Kamil* was far narrower than the broad clause here that provides for arbitration of any disputes arising out of or *related to* the Share Repurchase Agreements.

In *Marsch*, the parties executed two successive agreements involving completed separate projects, only one of which contained a provision for arbitration of "'"'any controversy . . . arising out of or relating to the contract . . . .'"''" (*Marsch*, *supra,* 23 Cal.App.4th at p. 256.) The complaint sought damages based only on breach of the agreement without the arbitration provision. The appellate court refused to compel arbitration agreement because the two agreements "were not closely connected in purpose, did not incorporate one another's terms, were not executed at the same time, and the breach of [one] did not necessarily lead to the breach of the [other]." (*Ibid.*) "Where . . . the parties have separate contractual relationships, which involve separate enterprises and most importantly separate commercial risks, an arbitration clause which governs one contractual relationship cannot be imposed in the other relationship without undermining the parties' reasonable expectations." (*Ibid.*) The cause of action in *Marsch* bore no relation to, and did not have its roots in the contract with the arbitration provision.

In *Lawrence, supra,* 207 Cal.App.3d 1501, the court held a client's agreement to arbitrate a dispute "'regarding fees, costs or any other aspect of our

attorney-client relationship'" when read in the context of the contract "devoted almost exclusively to financial matters" did not demonstrate a waiver of the right to a jury trial on legal malpractice claims. (*Id.* at pp. 1504-1506.) Pedes suggests *Lawrence* stands for the proposition that even a broadly worded arbitration clause applies only to disputes relating to the fundamental purpose of the contract containing the clause, which in this case it asserts is simply to provide the mechanism for its repurchase of shares. But as we have already explained, unlike the retainer agreement in *Lawrence* that only concerned the parties' financial affairs, the purpose of the Share Repurchase Agreements was to maintain continuity of Pedes' business affairs. The Share Repurchase Agreements specifically covered trade secret information and obligated Harris to maintain such information in confidence. The Share Repurchase Agreements provided for repurchase of Harris's shares upon certain occurrences including Pedes' misuse of trade secrets. The complaint alleged Harris obtained access to information designated to be trade secrets by the confidentiality agreements because he was a shareholder. Thus, it simply cannot be said that the trade secret cause of action was not related to the Share Repurchase Agreements.

Pedes in passing argues that even if its trade secrets cause of action against Harris had its "roots" in the trade secrets clause of the Share Repurchase Agreements, it is not subject to the arbitration clause because there is an independent statutory basis for the cause of action, i.e., the Trade Secrets Act. (Civ. Code, § 3426 et seq.) Pedes offers no legal analysis and cites to no authorities in support of the contention and we treat the point as waived. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785, see also *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [appellate court not required to consider points not supported by citation to authorities or record].)

In sum, the arbitration provisions in the Share Repurchase Agreements were sufficiently broad to encompass the trade secret cause of action alleged against Harris. Code of Civil Procedure section 1281.2 requires a trial court to grant a petition to

compel arbitration if an agreement to arbitrate the controversy exists, and Pedes has effectively conceded none of the exceptions to this mandate apply. Accordingly, the trial court erred by denying Harris's petition to compel arbitration of the trade secrets claim.

## DISPOSITION

The order denying arbitration of the trade secrets cause of action is reversed and the case is remanded for the trial court to enter a new order granting the motion to compel arbitration. Appellant is entitled to his costs on appeal.


O'LEARY, P. J.

WE CONCUR:


RYLAARSDAM, J.


IKOLA, J.