Opinion
 

 CROSBY, J.
 

 The law favors arbitration, and agreements to arbitrate are liberally construed. But what happens when a lawyer who drafts a retainer agreement containing an arbitration clause seeks to use it against his client with whom he has engaged in a side business transaction?
 

 The answer, like the transaction, does not bode well for the lawyer. There are higher presumptions, designed to protect clients in their business dealings with their attorneys. The onus is on the attorney to show no advantage was taken and that the client was given full and frank disclosure.
 

 The defendant attorney here fails to dispel the presumption that he took undue advantage. We refuse to allow him to benefit by his own broad draftsmanship to invoke an arbitration clause for apparently separate (and somewhat suspect) financial dealings with the plaintiff client and affirm the trial court’s refusal to compel arbitration.
 

 I
 

 In November 1993, D. Kenneth Mayhew filed suit against his attorney, Charles F. Benninghoff III, for conversion, breach of fiduciary duty and imposition of a constructive trust. Mayhew alleged he entrusted funds in February 1992 in the amount of $607,700 to Benninghoff in conjunction with a business dealing. Benninghoff was to “prudently invest such funds . . . so as to achieve a return thereon, consistent with the requirement that the principal sum remain safe and secure from dissipation or loss.” Mayhew alleged Benninghoff converted some $76,000 of these funds for his own use
 
 *1368
 
 and benefit, “fabricating] various pretenses for retaining Plaintiff’s funds . . ."
 

 Benninghoff promptly filed a motion to compel arbitration pursuant to Code of Civil Procedure section 1281.2. He declared he had represented Mayhew for more than 15 years. He attached a “standard” engagement letter, dated January 24,1992, containing an arbitration clause for “any controversy arising out of or related to the petitioner’s engagement for legal matters.” Mayhew had initialed and acknowledged the arbitration clause.
 
 [1]
 

 Benninghoff conceded Mayhew had delivered cashier’s checks to him in the amount of $607,700. He declared he had deducted $76,000 as unpaid legal fees arising from his representation of Mayhew during his divorce and other legal matters. He asserted the fee dispute should be arbitrated under the clear terms of the engagement agreement.
 
 [2]
 

 Mayhew opposed the petition based on the ambiguity of the arbitration clause in the engagement letter “in that it does not specify what matters it pertains to.” He declared he signed the engagement agreement in connection with his divorce and “did not understand that the arbitration agreement would apply to claims which I might have against Mr. Benninghoff that had nothing to do with his representation of me in the dissolution proceeding.”
 

 Mayhew’s opposition authenticated two separate sets of legal bills prepared by Benninghoff. Initially Benninghoff billed Mayhew the sum of $10,601 for the divorce, which Mayhew declared he had paid in full. After Mayhew demanded return of the money entrusted to Benninghoff, he received a new parallel bill, totaling $77,000, which contained substantially higher billings for the same services contained on the initial statement.
 
 [3]
 

 
 *1369
 
 Benninghoff’s motion to compel arbitration was heard and denied on January 26, 1994. There was no testimony on the hearing, which was based on the written declarations alone, including the engagement agreement.
 

 By statute an order denying a petition to compel arbitration is an appeal-able order. (Code Civ. Proc., § 1294, subd. (a);
 
 Fireman’s Fund Ins. Companies
 
 v.
 
 Younesi
 
 (1996) 48 Cal.App.4th 451, 456-457 [55 Cal.Rptr.2d 671].) Following Benninghoff’s timely notice of appeal, Mayhew prepared, and the trial court signed, a statement of decision which Benninghoff contends is statutorily defective and unsupported by the evidence submitted. Since the extrinsic evidence in this case consists entirely of written declarations, we review the arbitration clause de novo and do not consider the statement of decision.
 
 (Patterson
 
 v.
 
 ITT Consumer Financial Corp.
 
 (1993) 14 Cal.App.4th 1659, 1663 [18 Cal.Rptr.2d 563].)
 
 [4]
 

 II
 

 Attorneys wear different hats when they perform legal services on behalf of their clients and when they conduct business with them. As to the latter, the law presumes the hat they wear is a black one. As one leading commentator notes, “When an attorney enters a transaction with a client, the fiduciary obligations are influenced by rules developed for trustees. Thus, in any transaction in which the attorney is charged with obtaining an advantage from or of the client, the advantage is presumed to have been obtained without adequate consideration and because of undue influence. The policy underlying the presumption not only is salutary but also is preventive, intended to deter improper transactions between attorneys and clients.” (2 Mallen & Smith, Legal Malpractice (4th ed. 1996) § 14.21, p. 299, citing Probate Code section 16004, subdivision (c).)
 

 Rule 3-300 of the Rules of Professional Conduct requires attorneys who enter into business transactions with their clients to first advise them in writing to seek “the advice of an independent lawyer of the client’s choice.” The attorney is further obligated to give “ ‘his client “all that reasonable advice against himself that he would have given him against a third person.” ’ ”
 
 (Beery
 
 v.
 
 State Bar
 
 (1987) 43 Cal.3d 802, 813 [239 Cal.Rptr. 121, 739 P.2d 1289].)
 

 
 *1370
 
 Given these rules, Benninghoff cannot rely on the arbitration clause in his engagement letter to require arbitration of disputes arising out of a business transaction with Mayhew involving the transfer of more than one-half million dollars, whether or not they had an attorney-client relationship concerning other matters. The engagement letter does not explain what it covers; but we find eminently reasonable Mayhew’s explanation that he expected the arbitration clause only to extend to Benninghoff’s legal representation for his divorce,
 
 not
 
 his financial investments. If Benninghoff desired the arbitration clause to extend both to his rendering of legal services and unrelated business dealings, it was his responsibility to draft a clear and explicit agreement to that effect and to advise Mayhew of his right to independent legal advice.
 

 There is no evidence Benninghoff complied with any of these obligations. Accordingly, he failed to refute the presumption of voidability in transactions between an attorney and a client. Moreover, the doctrine of
 
 contra proferentem
 
 (construing ambiguous agreements against the drafter) applies with even greater force when the person who prepared the writing is a lawyer.
 
 (Lawrence
 
 v.
 
 Walzer & Gabrielson
 
 (1989) 207 Cal.App.3d 1501, 1507 [256 Cal.Rptr. 6];
 
 Alderman
 
 v.
 
 Hamilton
 
 (1988) 205 Cal.App.3d 1033, 1037 [252 Cal.Rptr. 845].)
 

 The
 
 Lawrence
 
 decision is instructive. In
 
 Lawrence
 
 a family law attorney drafted an all-inclusive arbitration clause in his retainer agreement. Mirroring the language in Benninghoff’s engagement letter, it provided for binding arbitration “ ‘[i]n the event of a dispute between us regarding fees, costs, or
 
 any other aspect of our attorney-client relationship
 
 . . . .’” (207 Cal.App.3d at p. 1504, italics added.)
 

 Despite the expansive language “ ‘any other aspect of our attorney-client relationship’ ” and despite the clause’s warning that such arbitration would be “ ‘binding,’ ”
 
 Lawrence
 
 refused to extend the arbitration clause to cover legal malpractice claims. It held a reasonable client would construe the arbitration clause as only extending to straightforward fee disputes. (207 Cal.App.3d at p. 1506.)
 

 If anything, Benninghoff had a greater responsibilities to ensure clarity in his written agreements with Mayhew than did the family law attorney in
 
 Lawrence
 
 because he chose to enmesh himself in suspect financial dealings with his client Mayhew. As in
 
 Lawrence,
 
 there is nothing to indicate Mayhew was advised by Benninghoff that his assent to arbitration of fee disputes in conjunction with the dissolution proceeding also impliedly included an assent to arbitrate Benninghoff’s alleged conversion of sums entrusted to him for investment.
 

 
 *1371
 
 We are baffled by Benninghoff’s argument that his ethical responsibilities are lessened because he was dealing with a client who is “very wealthy, having deposited with the attorney more than $607,000.00 of his own funds,” and “who is highly schooled in business affairs and is a fully licensed contractor.” Not all fools are poor. We decline to adopt a rule that encourages unscrupulous lawyers to make them so.
 

 We also question Benninghoff’s breezy assurances that Mayhew is a “sophisticated user of legal services . . . .” Had he been such, he may not have chosen to consult Benninghoff, whose acumen and integrity have not been well demonstrated by the arguments he makes in this appeal.
 

 III
 

 Benninghoff contends the Supreme Court’s decision in
 
 Moncharsh
 
 v.
 
 Heily & Blase
 
 (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899] has changed the rules of engagement, requiring arbitration even where it causes substantial injustice and “is contrary to public policy.” In this light he challenges the continued vitality of
 
 Lawrence.
 

 Benninghoff is wrong.
 
 Moncharsh
 
 did not permit lawyers to create a presumption of arbitrability through all-purpose arbitration clauses in engagement agreements with their clients.
 
 Moncharsh
 
 involved a dispute between a departing attorney and his former law firm, not a dispute between an attorney and a client. Unlike here, both sides concurred that the employment agreement in question required arbitration. As the Supreme Court explained, “Moncharsh does not argue that the arbitrator’s award strayed beyond the scope of the parties’ agreement by resolving issues the parties did not agree to arbitrate.” (3 Cal.4th at p. 28.)
 

 Post
 
 -Moncharsh
 
 cases make it clear that “[although California has a strong policy favoring arbitration ... the right to pursue claims in a judicial forum is a substantial right and one not lightly to be deemed waived. [Citations.] Because the parties to an arbitration clause surrender this substantial right, the general policy favoring arbitration cannot replace an agreement to arbitrate.”
 
 (Marsch
 
 v.
 
 Williams
 
 (1994) 23 Cal.App.4th 250, 254 [28 Cal.Rptr.2d 398]; see also
 
 County of Contra Costa
 
 v.
 
 Kaiser Foundation Health Plan, Inc.
 
 (1996) 47 Cal.App.4th 237, 245 [54 Cal.Rptr.2d 628] [“A party cannot be compelled to arbitrate a dispute that it has not elected to submit to arbitration.”].)
 

 In
 
 Fireman’s Fund Ins. Companies
 
 v.
 
 Younesi, supra,
 
 48 Cal.App.4th 451, the Court of Appeal refused to enlarge California’s fee arbitration statutes
 
 *1372
 
 (Civ. Code, § 2860, subd. (c)) to preclude an insurer’s fraud suit against the independent attorneys
 
 (Cumis
 
 counsel) it had hired to represent its insured. Despite California’s strong public policy favoring arbitration of fee disputes, the court declined to compel arbitration of litigation that went far beyond the amount of legal fees or hourly billing rates. The court noted, “Actions to recover damages for fraud are at law in which a right to a jury trial exists. [Citations.] Compelling arbitration would effectively violate [the insurer’s] constitutional right to have a jury determine the disputed facts in these causes of action. . . . We note that in all cases of doubt, the doubt should be resolved in favor of trial by jury.” (48 Cal.App.4th at pp. 458-459.)
 

 IV
 

 Benninghoff contends for the first time on appeal that the engagement agreement is controlled by the Federal Arbitration Act, 9 United States Code section 2. As in
 
 Henry
 
 v.
 
 Alcove Investment, Inc.
 
 (1991) 233 Cal.App.3d 94, 100-101 [284 Cal.Rptr. 255], we decline to consider this argument since “. . . it was not made in the proceeding below. . . . This rule is particularly appropriate where, as here, the new argument involves questions of fact not litigated in the trial court proceeding. Whether a transaction affects interstate commerce is a question of fact.”
 

 For the same reason we decline Mayhew’s request for attorney fees on appeal and at the trial court for resisting Benninghoff’s purported interpretation of the engagement agreement.
 

 The judgment is affirmed, and respondent is awarded costs on appeal.
 

 Sonenshine, Acting P. J., and Rylaarsdam, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied May 28, 1997.
 

 [1]
 

 The arbitration clause provided, “As a material inducement for attorney’s execution of this Engagement Agreement, it is agreed that all disputes between attorney and client. . . arising directly, or indirectly, against attorney on account of attorney’s representation of client, shall be resolved pursuant to binding arbitration before the American Arbitration Association, sitting in Irvine, California. Either party may submit any issue to such arbitration and said association, upon such application shall appoint forthwith an arbitrator whose decision shall be final, binding, and nonappealable and enforceable in any court as though it were a decision on [the] merits after a trial thereof.”
 

 [2]
 

 Benninghoff’s declaration is laced with gratuitous profanity and equally gratuitous slurs against Mayhew and Attorney Nardoni. Benninghoff not only casts aspersions upon how his client of some 15 years obtained a “high net worth” but he also questions Nardoni’s motivations in bringing the suit (“[to] have a client base to start his solo practice on”). This conduct is beyond the pale.
 

 [3]
 

 Benninghoff subsequently explained at the hearing he had “recomputed all the time that I had spent pursuant to this dispute” once Mayhew made his demand for repayment. He stated his initial, lower bill “was reflective of a relationship where I did not bill all the time that I had actually spent.”
 

 [4]
 

 Since we do not rely upon the challenged findings of fact and conclusions of law, we do not consider the “new evidence” Benninghoff purports to offer by a declaration which he appends to his opening brief. In that declaration Benninghoff suggests that Mayhew provided the $607,000 “as an investment in a shopping center project which he was to build,” and that he discounted his legal bills “[a]s a
 
 quid pro quo
 
 for arranging the investment . . . .” Benninghoff’s unilateral decision to insert new factual material into his opening brief by declaration grossly violates the letter and spirit of California Rules of Court, rule 23(a). In any event we do not see how it helps his case since it shows how deeply enmeshed he was in presumptively voidable business dealings with Mayhew.