Filed 2/25/13  Brennan v. U.S. TelePacific Corp. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOURNEY BRENNAN, | |
| Plaintiff and Respondent, | G046225 |
| v. | (Super. Ct. No. 30-2010-00422317) |
| U.S. TELEPACIFIC CORP, | ORDER MODIFYNG OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |
| Defendant and Appellant. | |

It is ordered that the opinion filed on January 30, 2013 be modified as follows:

On page 2, in the first paragraph, delete "Telepacific" and replace it with "TelePacific."

This modification does not change the judgment.  The petition for rehearing is DENIED.


THOMPSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ARONSON, J.

Filed 1/30/13  Brennan v. U.S. Telepacific CA4/3 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOURNEY BRENNAN, | |
| Plaintiff and Respondent, | G046225 |
| v. | (Super. Ct. No. 30-2010-00422317) |
| U.S. TELEPACIFIC CORP., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Ronald L. Bauer, Judge.  Affirmed.

Gibson, Dunn & Crutcher, Daniel M. Kolkey, Christopher Chorba, Babak Lalezari and Melissa Case for Defendant and Appellant.

Zeldes & Haeggquist, Amber L. Eck, Aaron M. Olsen; Hunt Ortmann Palffy Nieves Lubka Darling & Mah, Omel A. Nieves, Katherine J. Odenbreit and Alison C. Gibbs for Plaintiff and Respondent.

\*          \*          \*

Defendant U.S. Telepacific Corp. appeals from the denial of its motion to compel arbitration of a class action complaint filed by plaintiff Journey Brennan. Defendant's motion was based on an arbitration provision allegedly contained in a contract to provide telecommunication services to plaintiff. Defendant contends the court erred in finding it failed to meet its burden to show an enforceable arbitration agreement. It argues plaintiff made a judicial admission he was bound by an arbitration agreement or is equitably estopped from denying the agreement. Defendant also claims the agreement is not unconscionable and if there are any unconscionable terms, they may be severed. Plaintiff challenges each of these arguments and also asserts defendant waived the right to compel arbitration. We agree there is insufficient evidence to show the existence of an enforceable agreement to arbitrate and affirm on that basis.

FACTS AND PROCEDURAL HISTORY

According to the complaint and plaintiff's declaration, in February 2008 plaintiff entered into an "Account Agreement" and "Service Contract" (collectively Service Contract) for defendant to provide telecommunication services; the term of the contract was two years. Plaintiff received six documents comprising the Service Contract, none of which contained an arbitration provision. The arbitration provision is in a document entitled "Terms and Conditions" (Terms and Conditions). Plaintiff declares that at the time he executed the Service Contract he did not receive the Terms and Conditions nor did defendant "call [his] attention to it."

During the term of the Service Contract plaintiff, unhappy with defendant's services, contacted a representative who advised him a contract could be terminated if the customer gave written notice to defendant within 60 days of expiration of a term. Plaintiff gave such notice in January 2010. His declaration states that, despite the notice, the Service Contract automatically renewed. When he spoke to a representative about

2

cancellation in June 2010, that was the first time he was informed about the Terms and Conditions, which contained an early termination fee provision. To finally effect termination of the Service Contract he was required to pay an early termination fee of over $4,000.

In late 2010 plaintiff filed an action against defendant on behalf of himself and other members of the class for unfair competition, violation of Civil Code section 1671, subdivision (d) for unlawful liquidated damages, breach of contract and of the implied covenant of good faith and fair dealing, unjust enrichment, and money had and received, seeking damages and injunctive relief. Defendant filed a motion to compel arbitration after the decision *in AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. __ [131 S.Ct. 1740, 179 L.Ed.2d 742], which restricted states from imposing certain limitations on the enforceability of arbitration agreements. The court denied the motion, ruling defendant had not shown the existence of a binding arbitration agreement and had there been such an agreement it would be unenforceable as unconscionable. It stated "the arbitration provision was not brought to the attention of nor accepted by nor known to the plaintiff."

DISCUSSION

*1. Introduction*

"'The right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract. [Citations.] There is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate. [Citation.]' [Citation.]" (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 347.)

3

Defendant maintains the court erred in finding it had not established the existence of a valid agreement to arbitrate as set out in the Terms and Conditions and presents three arguments in support of its claim.

### 2. *Judicial Admissions*

"A judicial admission is a party's unequivocal concession of the truth of a matter." (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 48.) "An unclear or equivocal statement does not create a binding judicial admission. [Citations.]" (*Stroud v. Tunzi* (2008) 160 Cal.App.4th 377, 385.)

Defendant asserts certain allegations in the complaint constitute judicial admissions. Essentially he relies on plaintiff's allegation that the Service Contract had an early termination provision. This provision, defendant argues, is in the Terms and Conditions, which also contains the arbitration agreement. Likewise, plaintiff alleged he gave notice of termination pursuant to the provisions of the Service Contract. The termination provision is also in the Terms and Conditions. Finally, defendant points out the Terms and Conditions are attached as an exhibit to the complaint. Defendant concludes from this that plaintiff admitted he knew of and agreed to the arbitration provision.

But these allegations do not come close to satisfying the requirement that plaintiff make clear and unequivocal admissions of a fact. Nowhere does plaintiff plead or admit he agreed to the arbitration provision. Further, in addition to the allegations on which defendant relies, the complaint pleads the Terms and Conditions were effective in December 2009, almost two years after execution of the Service Contract. And attaching them as an exhibit is in no way a concession plaintiff knew of or agreed to their provisions, including the arbitration clause, at the time he entered into the Service Contract.

4

Defendant also relies on a comment made by plaintiff's counsel during argument at the hearing on the motion to compel, that the early termination fee was part of the agreement plaintiff reached with defendant. But this comment is selectively parsed from the larger argument the lawyer made.

In addressing contract formation and the court's question about whether plaintiff agreed to the terms of the arbitration provision, counsel stated, "A cursory review of the allegations in the complaint do reference the early termination fee provisions and the cancellation provisions that were set forth in the standardized [T]erms and [C]onditions . . . . It's uncontested that plaintiff was forced to pay an early termination fee pursuant to the [T]erms and [C]onditions and, likewise, proceeded to attempt to cancel his services within the cancellation provision under the [T]erms and [C]onditions. [¶] However, those provisions are actual parts of the agreement that [was] reached. And there is no specific express concession of fact that the arbitration agreement containing the terms and conditions was ever agreed to by the plaintiff." And a few sentences later she repeats, "There is no express allegation in the complaint that plaintiff ever agreed to the arbitration provision in the [T]erms and [C]onditions."

The only unequivocal statements made there are denials of any judicial admissions in the complaint. Reading in context the statement on which defendant relies, it appears counsel was stating that the early termination and fee provision were part of the agreement defendant was claiming controlled. In any event, we must give wider latitude to verbal statements because it is easier to misstate a point or have statements be misinterpreted, especially those made in the heat of a hearing. The lawyer's comments cannot be interpreted as an admission plaintiff consented to the agreement to arbitrate. Moreover an attorney cannot unilaterally make a concession that would significantly harm a client's substantive rights. (*Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 404-405; see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2012) ¶ 10:146, p. 10-58.) The judicial admissions doctrine does not apply.

5

*3. Equitable Estoppel*

"'[E]quitable estoppel is . . . a remedial judicial doctrine employed to insure fairness, prevent injustice, and do equity. It stems from the venerable judicial prerogative to redress unfairness in the application of otherwise inflexible legal dogma, based on sound public policy and equity. [Citation.]' [Citation.]" (*Leasequip, Inc. v. Dapeer* (2002) 103 Cal.App.4th 394, 403.) Defendant argues that "[w]hen it is successfully invoked, the court in effect closes its ears to a point—a fact, argument, claim, or defense—on the ground that to permit its assertion would be intolerably unfair." (*City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 486, fn. omitted.) "A paradigmatic estoppel arises from prior conduct by the asserting party that is somehow at odds with a point now sought to be asserted in litigation. Typically the triggering conduct is itself in some manner blameworthy. [Citations.]" (*Id.* at pp. 486-487.)

Defendant concludes plaintiff is estopped from denying his obligations under the arbitration provision because he "play[ed] fast and loose with his contractual obligations" by relying on the early termination fee and automatic renewal provisions in the Terms and Conditions all the while "disavowing the arbitration provision" in that document.

But defendant has misinterpreted or misapplied this doctrine or the facts. Plaintiff is not seeking to enforce these provisions in the Terms and Conditions against defendant. He is suing to enjoin their enforcement and recover for the damages he suffered. His position is completely consistent. Defendant is the one seeking to benefit from the provisions by enforcing them. The very case defendant cites, *Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 220, defeats its argument. *Goldman* bars a party only from "'seek[ing] to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny[ing] arbitration's applicability because the defendant is a non-signatory.' [Citation.]" (*Ibid.*)

6

Likewise, the principal enunciated in *Inter. Paper v. Schwabedissen Maschinene & Anlagen* (4th Cir. 2000) 206 F.3d 411 (*Inter. Paper*), cited with approval in *Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1711-1713, another case on which defendant relies, is inapplicable. *Inter. Paper* states a "buyer cannot sue to enforce the guarantees and warranties of the distributor-manufacturer contract without complying with its arbitration provision." (*Inter. Paper, supra,* 206 F.3d at pp. 413-414.) Again, plaintiff is not suing to enforce any provision of the Terms and Conditions; he seeks to prevent enforcement.

*Metalclad*, which applied equitable estoppel, does not support defendant's position either. There, the plaintiff, who was not a party to the contract, sued for damages for breach of that contract yet sought to evade the arbitration provision also contained in it. (*Metalclad Corp. v. Ventana Environmental Organizational Partnership, supra,* 109 Cal.App.4th at pp. 1713, 1717.) The court held Metalclad was bound by the arbitration provision because it sought the benefit of the contract. (*Id*. at pp. 1718-1719.) Our facts are not parallel.

At oral argument defendant took a different tack, arguing that, as the basis for his complaint, plaintiff is relying on the provision allowing termination with 60 days' notice, which is also in the Terms and Condition. According to plaintiff's declaration he did not know of the termination provision until defendant's representative told him about it during a phone conversation. Plaintiff was advised this is how he could cancel his contract. He alleges that, although he followed the procedure, defendant did not honor it but instead renewed the contract and then charged him an early termination fee.

Nowhere in the complaint is plaintiff seeking to take advantage of or basing the complaint on the 60-day termination provision for the benefit of the class. The complaint revolves around the alleged improper early termination fee. And following the termination procedure defendant dictated is hardly the type of "blameworthy" conduct

7

that is typical in an equitable estoppel situation.  (*City of Hollister v. Monterey Ins. Co.,* *supra,* 165 Cal.App.4th at pp. 486-487.)

We are not persuaded plaintiff is somehow seeking to benefit from the provisions of the Terms and Conditions by using them as the basis of the class action with the hopes of recovering a "large judgment (or settlement) with big attorney fees." The fact he brought a class action, a theoretically perfectly legitimate vehicle, to enjoin enforcement of the alleged improper provisions is not the equivalent of someone seeking to enforce contract terms while simultaneously attempting to avoid an arbitration requirement.  It would violate the very equitable premise of equitable estoppel to apply it to these circumstances.


*4. Substantial Evidence*

Defendant suggests that even if it does not prevail on judicial admission or estoppel theories, plaintiff is still required to arbitrate based on "traditional principals of contract law."  (Bold and capitalization omitted.)

Initially, the parties disagree about the standard of review of this issue. Plaintiff submits that we review this for substantial evidence.  Defendant claims case law dictates we look at it de novo.  It points to *Marcus & Millichap Real Estate Investment Brokerage Co. v. Hock Investment Co.* (1998) 68 Cal.App.4th 83, and a case from our division, *Mayhew v. Benninghoff* (1997) 53 Cal.App.4th 1365.  In *Mayhew* the court considered an order denying a motion to compel arbitration and held it would review the arbitration provision de novo "[s]ince the extrinsic evidence . . . consist[ed] entirely of written declarations."  (*Id.* at p. 1369.)

Subsequent to *Mayhew* we decided *Metters v. Ralphs Grocery Co.* (2008) 161 Cal.App.4th 696, which reviewed a finding an arbitration agreement did not exist. We explicitly declined to conduct a de novo review, stating the court had made factual

8

decisions after considering extrinsic evidence. Thus, we used the substantial evidence standard. (*Id*. at p. 701.)

*Mayhew* and *Metters* are not inconsistent. In *Mayhew* both parties admitted the existence of the arbitration provision. The only dispute was whether it applied to the allegations of the complaint. (*Mayhew v. Benninghoff, supra,* 53 Cal.App.4th at p. 1370.) Thus the question revolved around an interpretation of the language of the arbitration clause, a legal issue. "It is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.)

In *Metters*, by contrast, the parties disputed whether a valid arbitration agreement even existed and introduced declarations to support their respective positions. (*Metters v. Ralphs Grocery Co., supra,* 161 Cal.App.4th at pp. 698, 700.) Thus, we had to review factual determinations and the substantial evidence standard applied. (*Id*. at p. 701.)

"'Whether the parties formed a valid agreement to arbitrate is determined under general California contract law. [Citations.]' . . . 'Where the trial court's decision on arbitrability is based upon resolution of disputed facts, we review the decision for substantial evidence. [Citation.] In such a case we must "'accept the trial court's resolution of disputed facts when supported by substantial evidence; we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of the credibility of witnesses and the weight of the evidence.'" [Citation.]' [Citation.]" (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc., supra,* 203 Cal.App.4th at p. 348.)

In both his declaration and his deposition plaintiff stated he never received the Terms and Conditions at the time he entered into the Service Contract. Further, documents he produced in discovery support his claim he never received the Terms and Conditions. In his declaration plaintiff states the fax stamp on the Terms and Conditions

9

showed a date of June 2010 while the Service Contract faxed to him when he executed it showed February 2008. Defendant's contrary evidence was a declaration of its sales representative stating it was her standard practice to send the Terms and Conditions along with other documents when an account was opened. There was no evidence the Terms and Conditions had specifically been provided to plaintiff.

The court weighed the conflicting evidence on this issue and came down in plaintiff's favor, when it found plaintiff did not know about or agree to the arbitration agreement. To prevail on a motion to compel arbitration a party must prove the existence of an arbitration agreement by a preponderance of the evidence. (*Olvera v. El Pollo Loco, Inc.* (2009) 173 Cal.App.4th 447, 453.) Defendant failed to meet its burden.

Defendant argues that even if plaintiff did not initially receive the Terms and Conditions, it sent a brochure with the November 2009 invoice announcing they had been revised. The brochure directed plaintiff to defendant's Web site to find the complete text of the revised Terms and Conditions. Defendant maintains this was sufficient to bind plaintiff to the arbitration provision. We are not persuaded.

In *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, the defendant enclosed an insert with the invoice to the plaintiff, an existing customer, seeking to add an arbitration provision. The court held it was not enforceable, holding the provision had been added unilaterally and the plaintiff had never agreed to arbitrate. "'''[T]here is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . .''' [Citations.]' [Citations.]" (*Id.* at p. 788.)

Defendant attempts to distinguish *Badie*, arguing that here there was only a modification to the Service Contract, no addition of an arbitration provision, and it made only "minor, non-substantive edits." But that is not correct, given the trial court's finding plaintiff never agreed to the original arbitration provision. Thus, the so-called revision would in actuality have been a unilateral addition of an arbitration agreement, which, under *Badie*, is not allowed.

10

Furthermore, there is no evidence plaintiff knew of or agreed to the terms of the so-called amended arbitration provision. Plaintiff testified in his deposition the invoice containing the brochure was sent to his accountant. He had no opinion as to whether the accountant actually received it but had no "reason to doubt" that she did and did not "recall one way or the other" whether he himself received it. He stated in his declaration he never received the brochure and had never seen it before it was faxed to him in June 2010.

Defendant argues receipt by the accountant was sufficient to bind plaintiff. It relies on plaintiff's testimony that the accountant was authorized to "'receive and process invoices'" and maintains plaintiff also stated she forwarded "'important'" mail to plaintiff. But defendant points to nothing in the record actually supporting the latter assertion. And, as plaintiff points out, limited authority to pay invoices is not the same as authorization to waive the right to a jury trial. "An agent has such authority as the principal, actually or ostensibly, confers upon him." (Civ. Code, § 2315; see *Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 594 [authority to make medical decisions does not extend to authority to authorize arbitration, which "waive[s] important legal rights"].)

Defendant also contends *Badie* did not discuss Civil Code section 1589, which provides that "[a] voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, *so far as the facts are known, or ought to be known, to the person accepting*." (Italics added.) In making this argument defendant failed to quote the italicized portion of the section or address the knowledge requirement, which, obviously, is the crucial issue here. And, as discussed, the trial court properly found plaintiff had no such knowledge.

Finally, defendant asserts that at the very least, rather than outright denying the motion the trial court should have held an evidentiary hearing including live testimony. We disagree. First, the argument is set out in a footnote, violating court rules

11

requiring discrete headings for each issue, and we are not required to consider it. (*Evans v. CenterStone Development Co.* (2005) 134 Cal.App.4th 151, 160.) Second, even on the merits the contention fails. The case defendant cites to support its claim makes clear there is no requirement for a court to do so but rather it lies within its discretion. (*Bouton v. USAA Casualty Ins. Co.* (2008) 167 Cal.App.4th 412, 428.) Defendant has not shown it even requested such a hearing or that the court abused its discretion in failing to set one.

Because we affirm the trial court's finding plaintiff did not agree to enter into the arbitration provision, we have no need to decide the issues of unconscionability and waiver.

## DISPOSITION

The order is affirmed. Plaintiff is entitled to costs on appeal.

THOMPSON, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

ARONSON, J.

12