Filed 4/27/15  Aggeler v. Nordman Cormany Hair & Compton CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| MAUREEN McGRATH AGGELER et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>NORDMAN CORMANY HAIR & COMPTON et al.,<br><br>Defendants and Appellants. | 2d Civil No. B253566<br>(Super. Ct. No. 56-2013-00440610-CU-PN-VTA)<br>(Ventura County) |

Defendants Nordman Cormany Hair & Compton, LLP, and Marc Charney (collectively "NCHC") appeal an order denying their petition to compel arbitration of a legal malpractice lawsuit.  That action was filed by Maureen McGrath Aggeler, Trustee of the Maureen McGrath Aggeler Trust; Terence McGrath Aggeler; Sheila Aggeler Barnes; J.D. McGrath Farms, a limited partnership; E.M. Johansing, LLC; Philip H. McGrath, Trustee of the McGrath Family Bypass Intervivos Trust; and Anne Aggeler Will, individually and as Trustee of the John J. Will Family Trust (collectively "Park Owners").

We conclude, among other things, that a 2009 arbitration agreement between the Park Owners and NCHC applied to legal services NCHC provided to defend the Park Owners in a 2009 lawsuit.  It did not apply retroactively for legal services

NCHC provided for the Park Owners on a contract transaction four years earlier. We affirm.

## FACTS

The Park Owners own real property interests in the Hollywood Beach Mobilehome Park (HBMP). In 2005, HBMP hired NCHC to draft documents relating to the sale of lots for a mobilehome park condominium conversion. The conversion involved subdividing HBMP into "individual lots" and selling them to the residents of the mobilehome park. The Park Owners said their goal was for the lots to be sold at "the fair market" value at "the time of the actual sale of the lots." They claim they retained NCHC to draft contractual provisions to achieve that result.

In 2009, Frank Marler and Sandra Marler filed a class action lawsuit on behalf of the park's residents against the Park Owners for specific performance, breach of contract, elder abuse, fraud and other causes of action (the Marler action). They alleged the Park Owners agreed to sell the individual lots to the residents at prices within a range of $110,00 to $150,000. The Marlers claimed: 1) there was a "Cooperation Agreement" (COA) that bound the Park Owners to this price range, and 2) the Park Owners breached that agreement by raising the prices for those lots. The residents sought specific performance.

The Park Owners retained NCHC in 2009 to defend them in the Marler action. The retainer agreement contained an arbitration clause. It provided, "ANY DISPUTE (OTHER THAN A DISPUTE REGARDING THE PAYMENT OF ATTORNEY FEES) BETWEEN THE PARTIES HERETO ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ARISING OUT OF OR RELATING TO PROFESSIONAL SERVICES, SHALL BE RESOLVED BY BINDING ARBITRATION . . . ."

The trial court bifurcated the issues in the Marler action. In a 2013 "tentative decision on equitable issues," it found the park residents were entitled to specific performance based on the lower COA lot price range. It said the Park Owners "breached the agreement by failing to offer the residents the opportunity to purchase their

2

lots at prices consistent with the COA." The court rejected the Park Owners' request to rescind the agreement. It said, "If the owners misunderstood the meaning of the price term of the COA at the time it was executed, that mistaken understanding was neither shared by nor known to the plaintiffs." After the issuance of the tentative decision, the Park Owners settled the action by agreeing to be bound by the lower lot price ranges in the COA. They claimed they lost money because the COA lot values were significantly lower than the actual market value of the individual lots.

In August 2013, the Park Owners retained new counsel and filed a legal malpractice action against NCHC. They alleged that they suffered damage as a result of NCHC's "negligent conduct in the negotiation and drafting of the COA" in 2005, and that the loss occurred when the trial court issued its recent tentative decision defining the lot price range in the Marler action.

NCHC filed a petition to compel arbitration based on the 2009 arbitration clause. They agreed that the Park Owners' alleged malpractice claims involved NCHC's "drafting of a contract" in 2005. But they argued the 2009 arbitration clause was broad enough to cover it because the language was "without limitation to time or matters" to be arbitrated.

In opposition, the Park Owners said: 1) NCHC did not prepare an arbitration agreement regarding the 2005 legal services; 2) the Park Owners, as clients of the law firm, had the right to believe that those earlier services were not subject to an arbitration provision; 3) the 2009 arbitration clause was intended exclusively for the defense of the Marler action; and 4) NCHC was improperly using it to attempt to cover the 2005 services retroactively.

The trial court denied the petition to compel arbitration. It found the 2009 arbitration agreement only involved the 2009 Marler action. It said the arbitration clause was "prospective in nature and would not apply to representation 4 years prior to its signing."

3

DISCUSSION

*The Arbitration Agreement*

NCHC contends the 2009 arbitration agreement does not apply to the prior 2005 services they provided to the Park Owners. They claim the trial court erred by denying their petition to compel arbitration. We disagree.

Arbitration is "an accepted and favored method of resolving disputes . . . ." (*Powers v. Dickson, Carlson & Campillo* (1997) 54 Cal.App.4th 1102, 1109.) "'[B]ut there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . .'" (*Lawrence v. Walzer & Gabrielson* (1989) 207 Cal.App.3d 1501, 1505.)

Arbitration agreements between lawyers and their clients that bar clients from filing court actions against them are subject to close scrutiny. The lawyer is a fiduciary representing the client's interests. Consequently, the agreement the attorney makes with the client must be "'fair, reasonable and *fully explained to the client*. Such contracts are *strictly construed against the attorney*.'" (*Severson & Werson v. Bolinger* (1991) 235 Cal.App.3d 1569, 1572, italics added.) "[T]he doctrine of *contra proferentem* (construing ambiguous agreements against the drafter) applies with even greater force when the person who prepared the writing is a lawyer." (*Mayhew v. Benninghoff* (1997) 53 Cal.App.4th 1365, 1370.) Where a provision contains multiple meanings, the attorney must explain the consequences of each interpretation to the client. (*Reynolds v. Sorosis Fruit Co.* (1901) 133 Cal. 625, 630.) Courts decline to enforce unclear arbitration provisions where attorneys do not explain the language to their clients and attempt to use that language against them. (*Lawrence v. Walzer & Gabrielson*, *supra*, 207 Cal.App.3d at p. 1507.)

NCHC contends the language of the 2009 arbitration agreement must be interpreted to include the 2005 services. The agreement provides, in relevant part, "ANY DISPUTE (OTHER THAN A DISPUTE REGARDING THE PAYMENT OF ATTORNEY FEES) BETWEEN THE PARTIES HERETO ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ARISING OUT OF OR RELATING TO

4

PROFESSIONAL SERVICES, SHALL BE RESOLVED BY BINDING ARBITRATION . . . ."

NCHC claims the language "ANY DISPUTE . . . ARISING OUT OF OR RELATING TO PROFESSIONAL SERVICES" necessarily includes prior services. But this phrase and the language that immediately precedes it refer to "ANY DISPUTE . . . BETWEEN THE PARTIES HERETO *ARISING OUT OF OR RELATING TO THIS AGREEMENT* . . . ." (Italics added.) A client would reasonably believe the phrase "professional services" refers to the services "relating to this agreement," not a prior agreement.

NCHC suggests the phrase "professional services" is presumed to be a comprehensive arbitration clause for all services it ever provided. But California law does "not permit lawyers to create a presumption of arbitrability through all-purpose arbitration clauses in engagement agreements with their clients." (*Mayhew v. Benninghoff*, *supra*, 53 Cal.App.4th at p. 1371.) To determine the scope of the arbitration agreement, we must look to both "'the language used and the circumstances under which the agreement was made.'" (*Powers v. Dickson, Carlson & Campillo*, *supra*, 54 Cal.App.4th at p. 1111.) We consider how a reasonable client would interpret the provision as well as the reasons why the client sought the professional services. (*Ibid.*; *Mayhew*, at p. 1370.)

In 2009, the Park Owners had been sued and hired NCHC to represent them. The arbitration clause in the retainer agreement specifically and exclusively related to NCHC representing them in that action. The first sentence of the agreement NCHC sent to the Park Owners states, "Thank you for deciding to engage us to assist you in connection with *the above matter*." (Italics added.) The "above matter" is specifically referred to as "Re: Frank Marler . . . v. E.J. Johansing . . . , Superior Court, Ventura County Case No. 56-2009-003611006-CU-FR-VTA."

The agreement does not mention legal services provided in 2005. The Park Owners note those prior services were performed by NCHC without an agreement containing an arbitration clause. NCHC completed those services four years earlier. The

5

clients could reasonably rely on that fact in pursuing a malpractice action involving those services.

Moreover, in the petition to compel arbitration, NCHC acknowledged that the 2009 agreement is "related to a *separate legal matter*" from the earlier 2005 contract services. (Italics added.) Because the agreement was for the defense of the lawsuit filed in 2009, NCHC considered this to be "a new matter." They advised the Park Owners that: 1) "California law generally requires that we have a written engagement agreement for each *new matter . . .*," and 2) the "*scope of the engagement* will be to represent [the Park Owners] *in this matter*." (Italics added.) The suggestion that the agreement involved the prior contract preparation services is refuted by language showing the litigation aspect of this representation, e.g., "it may be necessary for us to hire *expert witnesses . . .* or *investigators*, and it is agreed that their fees and costs will be billed directly to you . . . . " (Italics added.) The language NCHC used refutes its claim that the arbitration clause was intended to apply to any matter other than the defense of the 2009 lawsuit. The Park Owners reasonably relied on the language restricting the scope of the representation in considering the scope of the arbitration clause.

The 2009 agreement also specifies that NCHC's legal services are to be performed *in the future*. It provides that "bills *will be sent* periodically" for these new services. This language does not support the claim that the agreement was intended to cover prior completed services. (*Security Watch, Inc. v. Sentinel Systems, Inc.* (6th Cir. 1999) 176 F.3d 369, 373 [arbitration provision was not retroactive where the contract containing the provision was "essentially forward-looking"].)

Where a provision may have more than one meaning, it is "'the duty of the attorney to inform the client of the fact of its susceptibility of two constructions, and having pointed out this liability . . . , proceed to know, definitively and clearly, his client's views, before proceeding further.'" (*Reynolds v. Sorosis Fruit Co.*, *supra*, 133 Cal. at p. 630.)

Here there is no advisement that arbitration is required for disputes regarding the 2005 contract services. Consequently, a client reading this agreement

6

would not know that NCHC would apply it to those services.  Because of the fiduciary nature of the relationship, if counsel wanted to apply the arbitration clause to the prior completed services, "it was [their] responsibility to draft *a clear and explicit agreement to that effect . . . ."*  (*Mayhew v. Benninghoff*, *supra*, 53 Cal.App.4th at p. 1370, italics added.)  The absence of such an agreement supports the Park Owners' position on appeal. (*Ibid.*)

The order is affirmed.  Costs on appeal are awarded in favor of the respondents.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

7

Rebecca Susan Riley, Judge

Superior Court County of Ventura

_____

Lewis Brisbois Bisgaard & Smith, LLP, Roy G. Weatherup, Michael B. Wilk for Defendants and Appellants.

Foley Bezek Behle & Curtis, LLP, Justin P. Karczag, Thomas Gayle Foley, Jr., Aaron L. Arndt; T. Todd Thompson for Plaintiffs and Respondents.