Filed 10/29/24  Nakahara v. Cohen CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| PATRICIA NAKAHARA, | B321385 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STCV18608) |
| v. | |
| BRUCE COHEN, Individually and as Trustee, etc., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Bruce Iwasaki, Judge.  Affirmed.

BMCA Law Group, Julia Machai Cohen and Bruce M. Cohen for Defendants and Appellants.

Reed & Reed and Darren G. Reed for Plaintiff and Respondent.

_____

Patricia Nakahara sued her attorney, Bruce Cohen, for allegedly failing to repay a loan she made to him in 2017. Cohen petitioned to compel arbitration and stay the lawsuit, citing a 2018 contingent fee agreement. (Code Civ. Proc., § 1281.2.)[1] The trial court denied Cohen's petition. On de novo review, we affirm.

The arbitration clause in Cohen's engagement letter solely applies to his contingent fee representation of Nakahara in a lawsuit against Coldwell Banker. It does not apply to a side deal, such as a personal loan to Cohen, or to disputes over hourly bills Nakahara incurred in other legal matters. Arbitration of a loan or hourly fee dispute cannot be ordered merely because the parties agreed to arbitrate a different matter.

## FACTS AND PROCEDURAL HISTORY
### *Allegations in Nakahara's Lawsuit*

In her unverified second amended complaint (SAC), Nakahara alleges that Cohen has been her attorney for many years. In 2017, Cohen asked to borrow money from Nakahara, who felt pressured to agree because he represented her in pending legal matters. She loaned him $111,902 to pay his rent; he promised to repay her within one year. The loan was not memorialized in writing.

The SAC alleges that Cohen failed to repay the loan and continued to charge Nakahara for legal services. He had her sign a contingent fee agreement in 2018. She did not want to rock the boat by asking for repayment, for fear he would cease representing her.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

In 2019, the controller for Nakahara's business asked Cohen about the debt. Cohen remained silent, which Nakahara "interpreted as meaning he acknowledged the debt and was still intending to pay it back." In 2021, after Cohen "made it clear that he did not intend to pay back the loan," Nakahara sued him individually and as trustee for a family trust.[2] The SAC asserts claims for money lent; breach of an oral contract; and breach of fiduciary duty for entering a loan transaction with a client that created a conflict of interest.

Attached as exhibits to the SAC are copies of two checks, one for $56,052.45 dated May 18, 2017, and one for $55,850 dated July 13, 2017. They are payable to "Douglas Emmett." It is undisputed that Douglas Emmett was Cohen's landlord. Each typewritten check has a handwritten note at the bottom reading "Bruce Loan—1801 Rent."[3]

### The Parties' Arbitration Agreement

On October 31, 2018, Cohen sent Nakahara a contingent fee agreement (Agreement). The Agreement is in a letter titled, "Re: *Legal Representation of Patricia Nakahara in the matter of Nakahara v. Coldwell Banker Residential Brokerage Co. et al., Los Angeles Superior Court Case No. SC128079.*" The "Scope of Representation" states, "Our responsibility is to represent you in connection with your affirmative claims" in the *Coldwell* case. Nakahara signed the Agreement.

The Agreement has a "Dispute Resolution" clause. It reads:

---

[2] We refer to defendants collectively as "Cohen."

[3] Cohen's office was located at 1801 Century Park East in Los Angeles.

"In the unlikely event of any dispute between us arising out of or related to our legal representation, including disputes over bills or the quality of representation, the matter will be resolved, to the extent permitted by California law, not by a Court proceeding, but by arbitration, in California, pursuant to the California Code of Civil Procedure. The result of arbitration will be binding and judgment may be entered in any Court having jurisdiction."

### *Cohen's Petition to Compel Arbitration*

Cohen petitioned for arbitration, arguing that Nakahara agreed to arbitrate "any dispute" between them "arising out of or related to" his legal representation. In his view, this covers Nakahara's "purported 'loan' " to him in 2017.

Cohen invoked the California Arbitration Act (CAA) and the Federal Arbitration Act (FAA), which favor arbitration of disputes. Nakahara refused to honor her agreement to arbitrate. Cohen asked the court to order arbitration and stay the lawsuit.

### *Nakahara's Opposition*

Nakahara wrote that Cohen has been her attorney for over 20 years, mainly for her business. He performed legal services and billed her without a formal agreement. In early 2017, Cohen became delinquent on his rent and borrowed $111,902.45 from Nakahara, whose checks were made payable to Cohen's landlord. The loan terms were not documented in writing.

Nakahara did not dispute signing the Agreement in 2018, long after she loaned money to Cohen. She declared that the Agreement was "strictly for" her case against Coldwell and had "absolutely nothing to do with the loan I gave to BRUCE COHEN in 2017." She noted that "defendant's petition to compel arbitration is strangely quiet as to why the defendant believes an

4

arbitration clause in a 2018 contingency fee retainer agreement can somehow apply to a transaction that occurred in 2017." Nakahara asked the court to deny the petition because the arbitration clause has nothing to do with this lawsuit.

### *Cohen's Reply*

Cohen reiterated his longstanding attorney-client relationship with Nakahara. He claimed she consented, in the Agreement, to arbitrate " 'any dispute' " arising out of his legal representation. He pointed to unsworn allegations in the SAC stating that Nakahara signed the Agreement when Cohen sought to repay his debt to her by performing services on a contingent fee basis. He opined that her breach of fiduciary duty claim arose in the context of his performance under the Agreement. He denied taking a loan from Nakahara or any obligation for repayment.

Cohen asserted that the checks attached to the SAC are altered. The originals did not have handwriting about a loan. He wrote that the handwriting was "a later addition, created for the purposes of fabricating the appearance of a 'loan.' "

Cohen declared that the checks were payment for legal services, "making this, *at most, a billing dispute*." When she disbursed the checks in 2017, Nakamura owed Cohen's law firm $141,883. The firm applied the checks as payment toward her debt for legal services. It asked Nakahara to make the checks payable to its landlord, Douglas Emmett, to serve as payment for the firm's $56,000 monthly rent.

Cohen wrote, "The entire $111,902.45 was applied to multiple client invoices in several legal matters" for services performed in 2016–2017. The firm's custodian of records, Julia Machai Cohen, declared that the checks were applied to "legal

work performed on [an] hourly fee basis and costs incurred in and prior to 2017." At the time, "the firm was continuing to perform significant amount of legal work and incur costs on behalf of Plaintiff and/or Morita Produce. In all but one specific contingency matter (the Coldwell Banker litigation), our work was performed on [an] hourly basis." The charges Nakahara incurred "do not include the work performed on [a] contingent fee basis in the Coldwell Banker litigation."

### *The Trial Court's Ruling*

The court denied Cohen's motion to compel arbitration. In summarizing the SAC's allegations regarding the 2017 loan to Cohen, the court observed that the Agreement was signed in 2018. It noted Cohen's view that the arbitration clause encompasses legal services rendered before 2018.

The court wrote that attorney-client arbitration agreements are strictly scrutinized due to the parties' fiduciary relationship. The loan alleged in the SAC "does not arise out of or relate to Cohen's legal representation of Nakahara" in the *Coldwell* case. The Agreement "did not exist" when Nakahara made the loan giving rise to her lawsuit and Cohen "fails to explain how an agreement executed after the alleged incident would be retroactive."

Nakahara did not dispute signing the Agreement relating to her case against Coldwell, but it did not mention her loan to Cohen. The court concluded, "I simply do not believe that this arbitration provision could conceivably have involved this alleged loan."

6

### DISCUSSION

#### 1. Appeal and Review

The denial of a motion to arbitrate is an appealable order. (§ 1294, subd. (a).) "The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.)

Whether parties must arbitrate is an issue for judicial determination: Arbitration may be ordered "only where the court is satisfied that the parties agreed to arbitrate *that dispute*." (*Granite Rock Co. v. Int'l Bhd. of Teamsters* (2010) 561 U.S. 287, 296, 297 [130 S.Ct. 2847, 177 L.Ed.2d 567]; *Moritz v. Universal City Studios LLC* (2020) 54 Cal.App.5th 238, 246 (*Moritz*).) We examine the Agreement and the parties' sworn declarations, not the unverified pleading, to resolve the issue. (*Hotels Nevada v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754, 762.) Review is de novo. (*Mayhew v. Benninghoff* (1997) 53 Cal.App.4th 1365, 1369 (*Mayhew*).)

#### 2. Cohen Did Not Show that the FAA Applies

Cohen contends that the FAA governs this dispute. Under the FAA, a provision to arbitrate controversies is "valid, irrevocable, and enforceable" absent legal or equitable grounds to revoke the agreement. (9 U.S.C. § 2.) The FAA applies to contracts "evidencing interstate commerce." (*Perry v. Thomas* (1987) 482 U.S. 483, 489 [107 S.Ct. 2520, 96 L.Ed.2d 246]; *Nixon v. AmeriHome Mortgage Co., LLC* (2021) 67 Cal.App.5th 934, 945.) "The party asserting the FAA applies to an agreement has 'the burden to demonstrate FAA coverage by declarations and

7

other evidence.' " (*Evenskaas v. California Transit, Inc.* (2022) 81 Cal.App.5th 285, 292.)

Cohen cited the FAA in his petition, but did not declare that the Agreement involves interstate commerce; further, the arbitration clause does not mention the FAA. Cohen did not carry his burden of demonstrating that the FAA applies. Accordingly, we analyze this dispute under the CAA, and do not discuss cases that rely on the FAA.

### 3. General Principles

"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists." (§ 1281.2.) Public policy favors arbitration as an expedient means of dispute resolution. (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.)

The policy favoring arbitration does not extend to all controversies. "Because the obligation to arbitrate arises from contract, the court may compel arbitration only if the dispute in question is one which the parties have agreed to arbitrate." (*Weeks v. Crow* (1980) 113 Cal.App.3d 350, 352; *Goldman v. Sunbridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1169.) Arbitration should be denied if " 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " (*AT&T Techs., Inc. v. Communs. Workers of Am.* (1986) 475 U.S. 643, 650 [106 S.Ct. 1415, 89 L.Ed.2d 648]; *City of Los Angeles v. Superior Court* (2013) 56 Cal.4th 1086, 1096.)

8

Attorney-client agreements " 'are evaluated at the time of their making and must be fair, reasonable and fully explained to the client.  Such contracts are strictly construed against the attorney.' " (*Severson & Werson v. Bolinger* (1991) 235 Cal.App.3d 1569, 1572 (*Severson*) [hourly fee agreement]; *Alderman v. Hamilton* (1988) 205 Cal.App.3d 1033, 1037 [contingent fee agreement].)  Ambiguities in an engagement agreement "are to be resolved 'in favor of the client and against the attorney.' " (*M'Guinness v. Johnson* (2015) 243 Cal.App.4th 602, 617–618.)  "[I]n any transaction in which the attorney is charged with obtaining an advantage from or of the client, the advantage is presumed to have been obtained without adequate consideration and because of undue influence." (*Mayhew, supra,* 53 Cal.App.4th at p. 1369.)

### 4.  The Parties Did Not Agree to Arbitrate This Dispute

Nakahara concedes that she signed the 2018 contingency Agreement containing an arbitration clause but declares that it governs the specific lawsuit listed in its title and does not apply to a transaction arising in 2017.  We agree.

Nakahara's alleged loan is evidenced by two 2017 checks payable to Cohen's landlord.  "The entire $111,902.45 was applied to multiple client invoices in several legal matters," Cohen asserts.  Julia Cohen declared that Nakahara was paying for "legal work performed on [an] hourly fee basis and costs incurred in and prior to 2017."  Specifically, it did *not* "include the work performed on [a] contingent fee basis in the Coldwell Banker litigation."

The Cohens have access to Nakahara's billing records.  If, as they claim, her checks were applied to bills for legal services in

9

hourly legal matters in 2016–2017, then the Agreement cannot apply. The Agreement's "Scope" is Cohen's work in *Nakahara v. Coldwell Banker*. Checks Nakahara wrote before the *Coldwell* case began are not within the scope of the Agreement. Cohen is impermissibly attempting to rewrite the Agreement to retroactively include transactions outside its scope.

We cannot construe the Agreement as applying to disputes over legal services or loans outside the *Coldwell* case. Given his fiduciary relationship with Nakahara and his drafting of the Agreement, any uncertainty is construed against Cohen. (*Severson, supra,* 235 Cal.App.3d at p. 1572.) If he wanted the Agreement to apply to non-*Coldwell* loan and/or fee disputes, he had to explicitly write that and explain it to his client. (*Mayhew, supra,* 53 Cal.App.4th at p. 1370.) There is no evidence he did so. No client reading the Agreement would understand that it applies to any matter except the *Coldwell* case.

Employment cases cited by Cohen at pages 56–58 of his brief are inapposite. Instead, we follow the reasoning in *Mayhew, supra,* 53 Cal.App.4th at pages 1370–1371, in which the court held that a broad arbitration clause in an attorney's engagement letter to handle a client's divorce did not apply to the attorney's alleged misconduct in a separate investment deal with the client.

The dispute alleged in the SAC does not have " 'its real source' " in the Agreement. (*Moritz, supra,* 54 Cal.App.5th at p. 246.) Courts cannot order arbitration "simply because the same parties agreed to arbitrate a different matter." (*Ibid.*) The parties agreed to arbitrate disputes arising from the *Coldwell* contingent fee case. Cohen admits that the charges Nakahara incurred—allegedly paid for with checks attached to the SAC—

10

does not include the work performed on a contingent fee basis in the *Coldwell* litigation.

The arbitration clause does not apply to a dispute over a 2017 loan or hourly legal fees. This reasoning applies with equal force to Nakahara's cause of action for fiduciary duty, which is not directed at legal services provided in the *Coldwell* case but assails Cohen for entering a loan transaction with a client that created a conflict of interest.

We express no opinion on the merits of the case. A fact finder must determine if Nakahara's checks were a loan (as Nakahara alleges), or if they were payment on an outstanding balance for hourly legal services rendered in 2016–2017 (as Cohen claims). We decide only that the Agreement's arbitration clause strictly applies to disputes arising in the *Coldwell* case. The money at issue in this lawsuit involves either a loan or legal services rendered before the *Coldwell* case was filed; therefore, the dispute is subject to litigation, not arbitration.

## DISPOSITION

The order denying the arbitration petition is affirmed. Nakahara is entitled to recover her costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.